[No. F049153. Fifth Dist. Mar. 23, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN DALE JENAN, Defendant and Appellant.

## COUNSEL

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Charles A. French and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GOMES, J.**—Alan Dale Jenan argues that the court's failure to follow established procedures to determine whether he was mentally competent requires reversal of the judgment.[1] The Attorney General argues the contrary. We will reverse the judgment.

---

[1] In a companion case, *People v. Jenan* (Mar. 23, 2007, F048199) (nonpub. opn.), we adjudicate like arguments by his brother. On our own motion, we take judicial notice of the

## DISCUSSION

On May 10, 2004, the district attorney filed a complaint charging Alan with offering a false or forged instrument for filing (Pen. Code, § 115, subd. (a)[2] on December 9, 2003 (count 1), and with sending a threatening letter with intent to extort (§ 523) on January 20, 2004 (count 2), charging Alan and Roger with sending a threatening letter with intent to extort (§ 523) on January 24, 2004 (count 3), charging Alan with offering a false or forged instrument for filing (§ 115, subd. (a)) on February 18, 2004 (count 4), and charging Roger with sending a threatening letter with intent to extort (§ 523) on March 30, 2004 (count 5).

On June 8, 2004, the Jenans appeared without counsel and waived time for arraignments. On July 6, 2004, the Jenans again appeared without counsel, the court proceeded with arraignments, and the Jenans pled not guilty.

On August 4, 2004, the Jenans again appeared without counsel; the court noted that "one of the concerns is that you need to have a lawyer represent you unless you want to represent yourselves," and a dialogue ensued:[3]

"MR. ROGER JENAN: Your Honor, we're here because we respect you as—as a [sic] individual who has subscribed and sworn to an oath of the office to duly protect the people of this country, especially this state and this county. We respect that.

"Now, you have information in front of you 'cause we've delivered it to you, a copy of the fact that there—the dispute or controversy has been resolved privately outside of court.

"The District Attorney—now we're just waiting for them to give you an order to dismiss the case because without the subject matter jurisdiction, which this court is absent totally of, you can't move forward. So we don't need an attorney. What would we do with an attorney? What would he do?

---

entire record in that case. (See Evid. Code, § 459; *Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 768, fn. 3 [52 Cal.Rptr.3d 683].) In each case, the court denied probation, imposed a prison term, and suspended execution of sentence for five years, which the court fixed as the term of formal probation. For brevity and clarity, later references to each brother are by first name only. No disrespect is intended. Later collective references to both brothers are by last name only.

[2] All statutory references are to the Penal Code unless otherwise noted.

[3] In propia persona, Alan and Roger each acted, at times expressly, at other times implicitly, on behalf of himself and his brother as to interests that were never adverse to, but were always identical to, those of the other, so we construe the arguments, documents, and statements of each as those of both.

"THE COURT: Well, he would defend you in this case and hopefully keep you out of prison.

"Mr. Alan Jenan, is that your position, as well?

"MR. ALAN JENAN: Your Honor, the court has no jurisdiction. The case has been abated.

"THE COURT: Okay. That is your position.

"MR. ALAN JENAN: And we have challenged the jurisdiction of this court.

"THE COURT: Well, let me just interrupt you here. I have nothing filed with the court which has got a court stamp file on it that is in the file that I'm responding to at this time because it hasn't been properly filed.

"Now, you indicated something about the District Attorney has been contacted privately between yourselves and the District Attorney's Office to have this matter resolved.

"MR. ROGER JENAN: Yes.

"THE COURT: Let me ask the District Attorney's representative . . . whether the District Attorney is inclined to dismiss this complaint or not?

"[PROSECUTOR]: No, we're not going to be dismissing the complaint.

"THE COURT: Okay. That being the case, then we're going to have to go forward.

"MR. ROGER JENAN: There's one other matter. I'm not arguing anything.

"THE COURT: I'm not, either. I'm just informing you.

"MR. ROGER JENAN: You were—you were delivered by mail and by hand delivery yesterday, I believe it was, or Monday, a copy. Of course, it's not on file unless you put it there, but you have knowledge of the abatement, and I expect you to act on that knowledge.

"THE COURT: Well, I don't have knowledge in the sense that it's officially before the court because unless something is filed with the court clerk and a file stamp placed on it with the proper case number and the matter

is also served upon the adversary, that being the District Attorney in this case, this court has nothing to respond to. You may deliver a thousand letters to the court, but that does not mean that they have any bearing on the case, itself."

Having informed the Jenans of the difference between delivering a letter and filing a document, the court asked if they wished to be represented by counsel:

"THE COURT: Now, that being the case, the District Attorney has indicated they are not going to dismiss. So we're going to have to proceed forward in the procedurally correct manner, and in order to get that procedurally correct manner underway, the first question is whether you have or want to be represented by an attorney.

"So Mr. Roger Jenan, what's your situation in that; are you desirous of having an attorney represent you, and if so, do you have the money to hire one?

"MR. ROGER JENAN: No, sir, I do not want to hire an attorney because that will make me a ward of the court and put me in your jurisdiction, and I do not intend in any way or any manner to confer, convey, or any other way give you jurisdiction over me or the subject matter.

"THE COURT: So the bottom line of all that is that you are going to represent yourself.

"MR. ROGER JENAN: If needed.

"THE COURT: All right. Now, Mr. Alan Jenan, what is your position in that regard?

"MR. ALAN JENAN: I agree with that, your Honor, because the case is a sham pleading, to start with—

"MR. ROGER JENAN: Don't argue the pleading.

"MR. ALAN JENAN: —that requires no answer from us.

"THE COURT: All right.

"MR. ALAN JENAN: We can enter no pleading to—anything that's not there. It's—the case has been abated.

"THE COURT: All right. So you're going to. be—I guess the bottom line of that is you're going to represent yourself.

"MR. ALAN JENAN: Your Honor, we may need assistance of counsel—

"THE COURT: Okay.

"MR. ALAN JENAN: —and we reserve the right to that assistance.

"THE COURT: Now, you can't say we because you have to speak for yourself.

"MR. ROGER JENAN: Don't reserve any rights.

"THE COURT: Do you wish to have a counsel represent you?

"MR. ALAN JENAN: Not at this time.

"THE COURT: All right. So both of you are indicating that you don't want counsel at this time. So you'll be proceeding pro per, as we call it, at this point in time. . . ."

After a brief dialogue with the prosecutor about the estimated 1,000 to 2,000 pages of discovery, the court addressed the issue of entry of pleas:

"THE COURT: So we're going to enter pleas of not guilty for both of you.

"MR. ROGER JENAN: I don't agree to that, but you do what you have to do.

"THE COURT: Well, I have to do it. Even if you refuse to enter a plea, the law requires I enter a plea of not guilty and then set the appropriate motions—or set the dates down the road here, and you can file whatever motions you wish to file . . . ."

After the court and the prosecutor talked about finding consecutive dates for calendaring the preliminary hearing conference and the preliminary hearing around a pending death penalty case on the prosecutor's calendar, the court engaged in a dialogue with Roger:

"THE COURT: The 26th of August would be a preliminary hearing conference. That would be a conference wherein you come in, the District Attorney is here. We decide if the case can be disposed of in some fashion.

"MR. ROGER JENAN: Okay.

"THE COURT: If not, then we discuss whether or not the matter is ready to go forward for a preliminary hearing on the following day, following day being the 27th of August, which is the day we'll set for the preliminary hearing.

"MR. ROGER JENAN: So on the 26th he could come in and dismiss the case?

"THE COURT: Well, he could, but I wouldn't hold my breath.

"MR. ROGER JENAN: Well, he owes us an awful lot of money, and he's caused you an awful lot of anguish, too, and expense to this court.

"THE COURT: I have no anguish. I enjoy being up here.

"MR. ROGER JENAN: But he's causing an unnecessary expense, and we've already sanctioned it. It might be something you want to consider, also.

"THE COURT: We'll take that all up at the appropriate time with the appropriate motions filed, but in the meantime, all parties are agreeable, this is going to be continued till the 26th of August for a preliminary hearing conference."

Once a problem with the availability of the prosecutor's primary witness came to light, the court and the prosecutor discussed moving the preliminary hearing conference and the preliminary hearing to the following week, after which Roger spoke on behalf of Alan and himself:

"MR. ROGER JENAN: I think that works for us. If something comes up, our medical condition or whatever, we'll let you know.

"THE COURT: If you do have a problem being here, be sure you communicate with the court so that we don't issue any warrants.

"MR. ROGER JENAN: There are times when I have a problem of doing anything.

"THE COURT: Very well. We'll see you on those days.

"[PROSECUTOR]: And, your Honor, the Jenans have been informed that they have a right to counsel, and they are rejecting that right?

"THE COURT: Yes, I've told them, and they've indicated at the moment, they're going to represent themselves."

On August 22, 2004, Alan and Roger each executed notarized documents entitled "deposition" and "truth affidavit." Each "deposition" identified the signatory as, respectively, "alan dale; jenan a sovereign" and "roger lewis; jenan a sovereign." Each "deposition," inter alia, cited "Glass v. The Sloop Betsy, 3 Dall 6" as authority for the proposition that each was a "[s]overeign and as such [he was] not bound by general words in Statutes, restrictive of prerogative right, title or interest, unless expressly named." Here is the entire text of the cited opinion of the United States Supreme Court. (*The Betsey* (1794) 3 U.S. 6, 15–16 [3 Dall. 6, 9, 1 L.Ed. 485] (maj. opn. of Jay, C. J.).):

"The judges being decidedly of opinion, that every district court in the United States possesses all the powers of a court of admiralty, whether considered as an instance or as a prize court, and that the plea of the aforesaid appellee, Pierre Arcade Johannene, to the jurisdiction of the district court of Maryland, is insufficient: therefore, it is considered by the supreme court aforesaid, and now finally decreed and adjudged by the same, that the said plea be, and the same is hereby overruled and dismissed, and that the decree of the said district court of Maryland, founded thereon, be and the same is hereby revoked, reversed and annulled.

"And the said supreme court being further clearly of opinion, that the district court of Maryland aforesaid has jurisdiction competent to inquire and to decide, whether, in the present case, restitution ought to be made to the claimants, or either of them, in whole or in part (that is, whether such restitution can be made consistently with the laws of nations and the treaties and laws of the United States); therefore, it is ordered and adjudged that the said district court of Maryland do proceed to determine upon the libel of the said Alexander S. Glass and others, agreeable to law and right, the said plea to the jurisdiction of the said court notwithstanding.

"And the said supreme court being further of opinion, that no foreign power can, of right, institute or erect any court of judicature of any kind, within the jurisdiction of the United States, but such only as may be warranted by, and be in pursuance of treaties, it is, therefore, decreed and adjudged, that the admiralty jurisdiction which has been exercised in the United States by the consuls of France, not being so warranted, is not of right.

"It is further ordered by the said supreme court, that this cause be, and it is hereby, remanded to the district court for the Maryland district, for a final decision, and that the several parties to the same do each pay their own costs."

Each "deposition" states, inter alia, that "[n]o action can be taken against a sovereign in the non-constitutional courts of either the United States or the state courts," that "any such action is considered the crime of Barratry," and that "Barratry is an offense at common law," and cites "State vs. Batson, 220 N.C. 411 [17 S.E. 2d 511, 512, 513]." The cited case, inter alia, muses that "[t]he crime of barratry seems to have had its origin in maritime law," notes that " 'common barratry is the offence of frequently exciting and stirring up suits and quarrels between his majesty's subjects, either at law or otherwise,' " and holds that the common law offense of barratry, "having never been the subject of legislation in North Carolina, and not being destructive nor repugnant to, nor inconsistent with, the form of government of the State, is in full force therein." (*State v. Batson* (N.C. 1941) 17 S.E.2d 511, 512.)

Each "deposition" states, inter alia, that since the Jenans gave the judge at the preliminary hearing "firsthand knowledge and proof of the Abatement of the case . . . for lack of Subject Matter jurisdiction" he "acted in violation of his Oaths by failing to protect and correct a known wrong," that he "committed High Treason" against the Jenans, each of whom, on the authority of title 18 United States Code section 112, is "an internationally protected person," and that he "committed Treason against the United States of America."

Each "truth affidavit" contains a preface: "Truth is expressed in the form of an Affidavit, and an Affidavit not rebutted stands as Truth. The undersigned sovereign, herein known as Affiant, a natural man, a living breathing soul, in correct capacity as beneficiary to the Original Jurisdiction, being of majority in age, having a sound mind, competent to testify, a self-realized entity, a free man upon the land, my yes be yes, my no be no, do state that the truths and facts herein are of firsthand knowledge, true, correct, complete, certain, and not misleading, so help me YHWH."

Each "truth affidavit" states, inter alia, that each of the Jenans is "competent in this matter" and "competent to testify," that each reserves "all of [his] rights, at all times, and waive[s] none of [his] rights at anytime, unless [he] explicitly state[s] otherwise," that each has "expatriated form [*sic*] the United States," and that each is a "Sovereign" who is "not bound by general words in Statutes, restrictive of prerogative right, title or interest, unless expressly named." Each "truth affidavit" states, inter alia, that the penalty for detainment of a sovereign is $75,000 an hour or $1.8 million a day "until concluded."

On August 22, 2004, three other people executed notarized documents entitled "affidavit," "deposition," and "truth affidavit," declaring, inter alia,

that the judges who presided over the proceedings in Alan and Roger's case never addressed the issue of abatement.

On August 23, 2004, Alan and Roger jointly filed a document entitled "Notice of Treasonous Acts" and "Opportunity to Correct the Record" that charged the court with "destroying the Judicial System from within" by giving "aid and comfort" to enemies of the United States and that offered the "opportunity to correct the record" within five days by abating the case. "As I am in Law and not at Law like you," the document concluded, "I recommend you obtain lawful assistance."

On September 2, 2004, the Jenans again appeared without counsel and, after the court continued the preliminary hearing, jointly filed three documents signed by "alan dale; jenan, sovereign" and "roger lewis; jenan, sovereign." The first document, entitled "Notice of Default" and "Failure to Protect," states that after receipt of the document entitled "Notice of Treasonous Acts" and "Opportunity to Correct the Record" on August 23, 2004, the court "again failed to act to protect and correct a known wrong against Alan Dale; Jenan a sovereign and Roger Lewis; Jenan a sovereign on 9-2-04": "Your record of a Treasonous act of 8-4-04 now stands as fact. Five people have witnessed your second Treasonous act of 9-2-04. This second act of treason shall also stand. [¶] Your failure to protect and correct a wrong has constituted further evidence of your overt acts. Should you recuses [sic] yourself without correcting the wrongs, it will be a new overt act adding additional charges of failing to protect and prevent."

The second document, entitled "Notice of Intent to File Charges of Treason with the United States of America Supreme Court to be heard by Congress within 90 days," states: "Your failure to uphold your Oaths has caused this action to be taken. You are hereby notified to prepare for defending your self [sic] against the charges of Treason against the United States of America. The Supreme Court of the United States of America shall be notified of the action. They shall appoint a Public Prosecutor for this action. The Congress of the United States of America shall set the penalty for this action."

The third document, entitled "Notice of Intent to File Charges of High Treason in the California Republic State Court Superior Court, Common Law Venue Original and Exclusive Jurisdiction united [sic] State [sic] of America, California Republic (Organic)," states: "Your failure to uphold your Oaths has caused this action to be taken. You are hereby notified to prepare for defending yourself against the charges of High Treason against two sovereigns. The Superior Court of the California Republic shall be notified of the action."

On September 3, 2004, the Jenans appeared without counsel for preliminary hearing, the court called the matter, and a dialogue among the court, Alan, and Roger ensued:

"THE COURT: Both Alan Dale and Roger Lewis Jenan, come up here to the counsel table.

"MR. ROGER JENAN: I'm Roger Lewis, making a special appearance, of the Jenan family. This is Alan Dale of the Jenan family. This is not a general appearance, it's a special appearance.

"DEFENDANT ALAN JENAN: I would like to remind the court we are still challenging jurisdiction.

"DEFENDANT ROGER JENAN: We're sovereigns. We expect you, under your oath, to protect us. We believe that's your duty.

"THE COURT: Just have a seat.

"DEFENDANT ROGER JENAN: There's one thing I'd like to mention. I liked your tie yesterday much better than the one today. It was brilliant.

"THE COURT: The one yesterday is for sale.

"DEFENDANT ROGER JENAN: It was brilliant.

"THE COURT: I'll try to improve. We are here on this case, this is case 127005. Both defendants are present without counsel because, we've been through this before, you both indicated on a previous occasion that you had not hired counsel, did not request that the court appoint counsel at this point in time.

"DEFENDANT ROGER JENAN: We didn't testify to anything, your Honor.

"THE COURT: Do you wish to have counsel appointed for you?

"DEFENDANT ROGER JENAN: No, there's no case.

"DEFENDANT ALAN JENAN: Not at this time, your Honor, because there's no case yet.

"DEFENDANT ROGER JENAN: We expect you, by your oath, to protect us.

"DEFENDANT ALAN JENAN: There's no reason to get an attorney."

The court ended the dialogue about representation, summarized the procedural history of the case and the pending charges, and asked if Alan and Roger understood:

"[THE COURT:] Do both you gentlemen understand the nature of the charges?

"DEFENDANT ROGER JENAN: Yes, I do. They've been abated.

"THE COURT: Whether they have or haven't—

"DEFENDANT ROGER JENAN: You have the information. They have been."

The court expressed concern about Alan's and Roger's mental competence and lack of representation by counsel:

"THE COURT: *Let me go on the record with what my concern is. I know you are unrepresented by counsel. Under 1368 of the Penal Code, there is a concern that nobody in this state can be proceeded on or proceeded against in a criminal case if they, number one, do not understand the nature of the proceedings against them. I just want to verify that you both understand the nature of the charges. Whether you agree with them or not is not my concern at the moment. I want to make sure you both understand the nature of the proceedings, what these charges allege.*

"DEFENDANT ROGER JENAN: What I do understand is that you just used the term 'this state.' We are not in this state. We are sovereigns. We have expatriated. We do not come under your rules. It's up to you to protect us. We're holding you to that.

"THE COURT: That doesn't answer my question. My question is, whether you are under this state or not, do you understand the nature of what's being charged against both of you?

"DEFENDANT ALAN JENAN: Your honor, without—

"DEFENDANT ROGER JENAN: I believe if they are wrong, we're not going to argue right or wrong.

"THE COURT: I don't want to get to that. Do you understand the nature of the charge?

"DEFENDANT ROGER JENAN: I don't stand under either.

"THE COURT: I said do you understand?

"DEFENDANT ROGER JENAN: That means stand under and we do not.

"THE COURT: Let me—are you Roger?

"DEFENDANT ALAN JENAN: I'm Alan. Without granting jurisdiction, which the court does not have, these charges are so totally phony. We can't understand any of them. It doesn't identify any victim. It doesn't identify anything.

"DEFENDANT ROGER JENAN: We don't want to go there. Get on with whatever you have to do.

"THE COURT: *Otherwise, I'd have to remand you and have a 1368 proceeding*—

"DEFENDANT ROGER JENAN: Just do—

"THE COURT: —get involved in those type of proceedings.

"DEFENDANT ROGER JENAN: Do whatever you have to do. We'll sit and watch it.

"THE COURT: It wouldn't necessarily take place. [Addressing the prosecutor], are you ready to proceed?

"[PROSECUTOR]: I'm ready to proceed. The concern I had was the defendants' ability to understand what's happening and to rationally assist in their defense in this case, rationally defend themselves. If the court is making a finding the court doesn't have concerns there, I'm ready to proceed.

"DEFENDANT ROGER JENAN: If he's leading to evaluation thing, that's totally out of line.

"THE COURT: That's what I'm trying to determine. I have an obligation—

"DEFENDANT ROGER JENAN: We understand enough to know what you are doing.

"THE COURT: Same with you, Mr. Alan Jenan?

"DEFENDANT ALAN JENAN: I think I do.

"THE COURT: Then we'll proceed here. I do have to cover that one base because I want to make sure.

"DEFENDANT ROGER JENAN: I understand you have certain duties to do. We're watching, with witnesses." (Italics added.)

After the prosecutor put on his sole witness, a district attorney's investigator, the court asked the Jenans if either had any questions, and a dialogue ensued:

"DEFENDANT ROGER JENAN: There's no case to respond to. I'm sorry, no.

"THE COURT: I take that as a no. Alan Jenan, do you have any questions?

"DEFENDANT ALAN JENAN: Your Honor, without granting jurisdiction to the court, I would like to remind the court of case number 01-79256. That's it.

"THE COURT: I don't know what that case is about.

"DEFENDANT ROGER JENAN: This [*sic*] is no discussing this case.

"THE COURT: I'll take it as a no, there is no cross-examination."

Once the prosecutor stated he had no other witnesses, the court asked if the Jenans wished to put on a defense. Roger replied: "None needed. Thank you, though." When the prosecutor moved to hold the Jenans to answer, Roger stated, "I'd like to remind the court that the DA continues to dishonor the court, place you in jeopardy. And I'm sure you have the answer at your fingertips. I hope you'll exercise that."

The prosecutor directed the court's attention to the California Uniform Commercial Code financing statement (UCC-1) in evidence and stated that the law required the debtor to agree to and to have notice of the filing but that neither had occurred. Roger interjected, "Is the DA testifying?" "He's making an argument," the court answered. "Sounds like he's testifying," Roger retorted.

After the prosecutor argued his case at length, the court asked the Jenans for comments. Roger's reply was that "repeatedly the DA continues to dishonor this court" and that the "DA fully is aware that there is no

controversy because they agreed to no controversy for the subject matter. Jurisdiction cannot possibly attach to this court."

With the preface, "Let me give you a little lesson here," the court disparaged Alan and Roger's defense as "nonsense":

"THE COURT: The DA's office in any county in this state has the ability to file a criminal charge against someone, if in fact there is reasonable belief or probable cause to do the filing. The DA in this case obviously determined there was probable cause to file charges against both of you.

"This court must respond by having both of you brought to court, apprised of the charges, given the opportunity to obtain an attorney in a felony case, such as this. The next step is to have a preliminary hearing. Once a preliminary hearing is had, the People's obligation is to put on the evidence to show that a crime has been committed and that the people charged are reasonably likely to have been the persons committing that crime. The standard is not the same as a trial. It's not beyond a reasonable doubt. It's just a reasonable suspicion.

"The DA has come in here, has done that in this case, at least so far in my opinion, absent any defense. My obligation is, if that has been done, to hold both of you to answer for trial. What that entails is the fact that I would order the DA's office to file what we call an information, which is another form of pleading. And you would be arraigned on that information two weeks from today.

"You come in to court on that date, you enter a plea of either guilty or not guilty. If you enter a plea of not guilty, then the judge at that time will set a trial date. Then you can have either a court trial or a jury trial. And that's the way we proceed.

"All this other nonsense about abatement, all this, I don't even have any concept of what you are talking about because I'm obligated under my commitment as a judge here to follow the rules set down by the State of California. I'm doing exactly that.

"I'm giving you the opportunity here at this time to make any argument you wish to against [the prosecutor's] argument that he feels there's probable cause to hold you to answer. If you don't want to do that, that's fine. If you do want to do it, I'm willing to listen.

"I do have some documents there that you have filed with the court indicating something about a notice to default—a notice of default filed

against me indicating that there's some treasonous acts. I don't know what those are. I assume, from my reading of this, that you are saying I've committed a treasonous act if in fact I allow this proceeding to go any further than today and not dismiss it.

"Well, I'm acting under the laws I'm obligated to uphold. Absent anything else, I'm going to hold both of you to answer for trial. I don't know what you are planning to do against me or the DA or anybody else after this proceeding. But I would caution you that what you do may lead to further complications if, in fact, you commit any violations of the law, such as 115 of the Penal Code or 523 of the Penal Code."

After the court asked if the Jenans had "any statements or arguments" to make "against what [the prosecutor] set forth," a dialogue among the court, the prosecutor, Alan, and Roger ensued:

"DEFENDANT ALAN JENAN: Yes, your Honor. Without conceding jurisdiction, I bring the court's attention to criminal case number 01-79256, in which all the charges have already been heard. They have all been found in my favor. The DA has no case.

"THE COURT: I'm not on board with what that means.

"DEFENDANT ALAN JENAN: All of the charges they have just made stem from that case in which I was found not guilty by a jury of filing a false UCC-1, claiming the bank and Boswell were indebted to me. The jury has declared me not guilty of that, filing a false form.

"When I refiled it, that's what they are claiming, is I filed a false form by refil[ing] one that a jury had already said was valid. They are—I don't know where they are coming from. They have no claim. The issues have been heard by a jury and found in my favor.

"THE COURT: Are you claiming double jeopardy?

"DEFENDANT ALAN JENAN: I certainly am.

"THE COURT: I don't have that evidence before me.

"[PROSECUTOR]: I can explain to the court in a second. There is one thing I wanted to put on the record, I neglected to do so earlier. I would ask the witness [district attorney's investigator] how many years he's been a sworn officer.

"THE COURT: I'll allow you to reopen.

"[PROSECUTOR]: Just to clarify the record.

"THE COURT: He is still under oath. How many years have you been a sworn peace officer?

"THE WITNESS: Eighteen.

"THE COURT: Any cross-examination on that issue?

"DEFENDANT ROGER JENAN: No. I've known him since he was a kid. I think he still is.

"THE COURT: How about you, Mr. Alan Jenan, any cross-examination on that one question?

"DEFENDANT ALAN JENAN: Not on that question, your Honor. But I would like him, as an investigator, to get a transcript of case number 01-79256.

"[PROSECUTOR]: I can explain to the court what Mr. Roger Jenan is speaking about. I'm sorry, Alan Jenan is speaking about. Mr. Alan Jenan filed a UCC-1 in 2001 on the same matters. But one of the things I did, I put in the court documents that were filed all in 2002. I refiled charges against him.

"That case as to the UCC-1 that was filed in 2001 went to jury trial and the jury did not find there was evidence beyond a reasonable doubt. I'm not exactly sure what the issue was, but there was not evidence beyond a reasonable doubt as to his guilt on that 2001 UCC-1 filing. We are not prosecuting him for the 2001 UCC filing.

"DEFENDANT ALAN JENAN: That's totally false.

"PROSECUTOR: We are prosecuting him for the filing of the December 9 UCC-1 of 2003 and the UCC3 or 5—UCC5 that was filed on February 18, 2004, as well as the newsletter, the letter to the bank and the letter to the Department of Financial Institutions.

"THE COURT: If I understand right, we're talking about the same UCC, it's just different filing dates. The first filing date being in '01. He or they were both charged with that case, went through the process, they were found not guilty on that issue itself, that—

"[PROSECUTOR]: On that document.

"THE COURT: On the '01 filing. That case is dead and buried. We come down to '03 and '04 and that same UCC is again filed. Is that basically it?

"DEFENDANT ALAN JENAN: That is correct.

"[PROSECUTOR]: It wasn't the same document.

"DEFENDANT ALAN JENAN: It was exactly the same document.

"[PROSECUTOR]: The UCC-1 is a standard form. If you want to file a lien on a debtor because that debtor says, 'I acknowledge I owe this debt,' that gives a secured interest in that debtor, you can file a UCC-1 with the Secretary of State. They filed a UCC-1 standard claim in 2001. They now filed a UCC-1 in 2003, a separate UCC-1.

"THE COURT: Without the confirmation—

"[PROSECUTOR]: Exactly. The claimed debtor did not acknowledge and in fact was not given notice at the time of filing. And they filed a correction, a UCC5, on February 18 of this year.

"DEFENDANT ALAN JENAN: Your Honor, is he testifying?

"THE COURT: He's going over the facts."

Alan asked for time to refer to a law book with which to counter the prosecutor's request that the court hold him and his brother to answer:

"DEFENDANT ALAN JENAN: Can you wait one minute until I get a book to settle some of his problems. It's right there.

"THE COURT: We'll do that.

"[PROSECUTOR]: While he's getting his book, perhaps this would be analogous to taking a shot at somebody and getting found not guilty in 2001, taking another shot at them in 2003, there's a new case.

"THE COURT: I understand.

"DEFENDANT ALAN JENAN: There's no new case. It's the same issue. Wait a minute.

"Will counsel read this section right here, starting right here, number two.

"THE COURT: What are we reading out of?

"DEFENDANT ALAN JENAN: Parkers Company 1999 copy of Uniform Commercial Codes for California.

"[PROSECUTOR]: The problem—

"THE COURT: Let's make a good record here. What section?

"[PROSECUTOR]: 9402. He was pointing out paragraph two. The book he's talking about is the 1999 Uniform Commercial Codes by Lexis. Specific reference for the court, it states, 'Financing statement which otherwise complies with subdivision one is sufficient when it is signed by the secured party debtor if it is filed per a security interest in or as a fixture filing covering any of the following . . .'

"However, they have to be a valid debt. That's the issue. The bankruptcy court said there's no valid debt repeatedly."

"THE COURT: It requires the debtor's agreement?

"DEFENDANT ALAN JENAN: It doesn't if there's a valid debt but there's no debt value. It goes on to state, 'Any proceeds under 9306, which is proceeds from the sale of property,' and I certainly have those.

"THE COURT: I don't have any evidence here there is a valid debt. The only evidence I have is what's reflected in the various documents that have been marked and admitted into evidence.

"DEFENDANT ALAN JENAN: In the court case, the jury found it was a valid debt. I have the case here.

"THE COURT: I don't have that before me, and I think you are misinterpreting what a jury is to decide. They are deciding guilt or non-guilt.

"DEFENDANT ALAN JENAN: He has no idea what a UCC-1 really is."

At that juncture, the court cut off Alan's effort to counter the prosecutor's argument and held him and his brother to answer:

"THE COURT: I'm afraid you all will have to fight this out at a later time. If you really feel that way, I think you need to have an attorney represent you.

"With the evidence I have before me, I'm going to make a finding that the crimes as charged have been committed, that the two defendants named are responsible for those crimes, and you are ordered to appear . . . ."

After Roger informed the court of the "appropriate action" that he and Alan were going to take, the court warned that the alternative to keeping quiet was the initiation of mental competence proceedings:

"DEFENDANT ROGER JENAN: Just to reiterate again, we have witnesses here that have witnessed you violate your oath. We will take appropriate action.

"THE COURT: I can only advise you again, don't do something that might result in another filing against you.

"DEFENDANT ROGER JENAN: We asked you to do the same thing. You didn't do it today.

"THE COURT: I'm not concerned with you taking me before the United States Supreme Court within ninety days, having this matter heard by Congress, because I don't think that's going to happen. I don't know who the United States—whatever you call it—California Republic Court is.

"I assume that court, if there is such a thing that you have, is going to render some sort of a judgment. And I would just caution you as to a judgment against me, [the prosecutor] or anyone else connected with this case. I would just advise you to be very careful what you file, where you file things, and how you proceed.

"You can have all the judgments you want to. Doing things such as filing in violation of 115 of the Penal Code and/or sending threatening letters, pursuant to 523 of the Penal Code, are crimes which, I'm sure you're well aware—

"MR. ROGER JENAN: Crimes in this state, correct?

"THE COURT: Correct.

"MR. ROGER JENAN: We're not in this state.

"THE COURT: If you file anything or send anything through the mail, you are in this state.

"DEFENDANT ROGER JENAN: You're talking about the corporation?

"THE COURT: I'm not threatening. I'm just advising.

"MR. ROGER JENAN: Are you talking about the State of California corporation?

"THE COURT: I'm talking about the State of California.

"DEFENDANT ROGER JENAN: Corporation. It is a corporation, right, it has an ID number.

"THE COURT: *Mr. Jenan, 1368 may well apply if you don't keep quiet.*" (Italics added.)

Roger uttered only two words—"Good luck"—and then kept quiet. Alan kept entirely quiet. At that moment, the proceedings ended abruptly.

■ Our analysis and application of the governing law will be as brief as the record is eloquent on the issues before us. As a defendant who is mentally incompetent cannot "understand the nature of the criminal proceedings or . . . assist counsel in the conduct of a defense in a rational manner," so he or she "cannot be tried or adjudged to punishment." (§ 1367, subd. (a);[4] see *Drope v. Missouri* (1975) 420 U.S. 162, 171 [43 L.Ed.2d 103, 95 S.Ct. 896].) The doubt as to mental competence that arose in the court's mind at the preliminary hearing imposed on the court the duty to appoint counsel to represent Alan on that issue at that time: "If . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and . . . [*i*]f *the defendant is not represented by counsel, the court shall appoint counsel.*" (§ 1368, subd. (a), italics added.[5] The court failed to do so.

---

[4] Section 1367, subdivision (a) provides: "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

[5] Section 1368, subdivision (a) provides: "If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel. At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time."

The United States Supreme Court has held that "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him [or her]' of his [or her] due process right to a fair trial." (*Drope v. Missouri, supra,* 420 U.S. at p. 172, citing *Pate v. Robinson* (1966) 383 U.S. 375, 385 [15 L.Ed.2d 815, 86 S.Ct. 836].) Congruently, the California Supreme Court has held that the "court does not lose subject matter jurisdiction when it fails to hold a competency hearing, but rather acts in excess of jurisdiction by depriving the defendant of a fair trial." (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 70 [2 Cal.Rptr.2d 389, 820 P.2d 613].) The record there "established reversible error because the trial court failed to hold a competency hearing in compliance with section 1368, subdivision (b)[6], after expressing a doubt as to defendant's ability to proceed with the guilt phase." (*People v. Superior Court (Marks)*, at p. 62, citing *People v. Marks* (1988) 45 Cal.3d 1335, 1340–1344 [248 Cal.Rptr. 874, 756 P.2d 260] (collectively the *Marks* cases).)

The standard of mental competence to stand trial is the same as the standard of mental competence to waive the assistance of counsel. (See, e.g., *Godinez v. Moran* (1993) 509 U.S. 389, 399–401 [125 L.Ed.2d 321, 113 S.Ct. 2680]; *People v. Stewart* (2004) 33 Cal.4th 425, 513 [15 Cal.Rptr.3d 656, 93 P.3d 271], citing *Godinez, supra,* at pp. 396, 399, 401, fn. 12; *People v. Welch* (1999) 20 Cal.4th 701, 732 [85 Cal.Rptr.2d 203, 976 P.2d 754]; cf. *Faretta v. California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 95 S.Ct. 2525].) By denying Alan appointed counsel and by forcing self-representation on him at a time when his mental competence was at issue, the court's dereliction of statutory duty likewise denied him his right to counsel.

In the *Marks* cases, the court expressed a doubt about mental competence and ordered a hearing but never held one. Here, not once, but twice, the court expressed a doubt about mental competence and warned of a hearing but never ordered one. That is a distinction without a difference. Here, the court's failure to appoint counsel at the preliminary hearing compels reversal of the judgment.

---

[6] Section 1368, subdivision (b) provides: "If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing. Any hearing shall be held in the superior court."

## DISPOSITION

The judgment is reversed.[7]

Vartabedian, Acting P. J., and Cornell, J., concurred.

---

[7] In light of our holding, we will address none of the other issues on appeal.