[No. S004443, Crim. No. 22553. July 14, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN MARKS, Defendant and Appellant.

## COUNSEL

Norton Tooby, under appointment by the Supreme Court, and Barbara Michel for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Marc E. Turchin, Mark Alan Hart, Thomas L. Willhite, Jr., and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

EAGLESON, J.—This is an automatic appeal (Pen. Code, § 1239, subd. (b)) from a judgment of death imposed pursuant to California's 1978 death penalty statutes. (Pen. Code, § 190 et seq.)[1] We reverse the entire judgment because the trial court failed to conduct a competency hearing pursuant to sections 1368 and 1369 after specifically stating a doubt as to defendant's competency to stand trial and ordering a hearing to determine his competency. We reiterate our recent unanimous holding in *People* v. *Hale* (1988) 44 Cal.3d 531 [244 Cal.Rptr. 114, 749 P.2d 769] that, once a trial court has ordered a competency hearing pursuant to section 1368, the court lacks jurisdiction to conduct further proceedings on the criminal charge or charges against the defendant until the court has determined whether he is competent. This determination is mandated by the federal constitutional requirement of due process and by unambiguous California statutes.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Although we reverse solely on this ground, we emphasize that there were numerous and significant other problems at trial that, either alone or in combination, almost certainly would have resulted in a reversal of the judgment in whole or in part even if defendant had been found competent in a proper proceeding under sections 1368 and 1369. To provide guidance in the event of a retrial, we will briefly note these problems.

## THE FACTS

Ronald Moore was killed in Valinda, California, in November 1980. Defendant's stepsister, Margaret Moore, was the victim's wife. The prosecution theory was that she wanted to kill her husband to obtain money from an insurance policy on his life and from the sale of the family home and because he had been violent against her. The prosecution contended she and her paramour, Leonard Brown, hired defendant to kill her husband.

An information filed in Los Angeles Superior Court charged defendant with murder (§ 187) and with two special circumstances: (1) that the murder was intentional and carried out for financial gain (§ 190.2, subd. (a)(1)); and (2) that defendant intentionally killed the victim while lying in wait (§ 190.2, subd. (a)(15)). The information also charged defendant with conspiracy to commit murder (§ 182) for financial gain, with personally using a handgun in the commission of the murder (§§ 12022.5 and 1203.06, subd. (a)(1)), and with personally inflicting great bodily harm on the victim (§§ 12022.7 and 1203.075).[2]

At a pretrial hearing on April 2, 1981, defendant's counsel expressed severe doubt as to defendant's ability to understand the nature of the proceedings against him and to assist in his defense. Defendant was present. Counsel requested a finding that defendant was not competent to stand trial. The prosecutor did not object. The trial court responded as follows: "All right. Based upon Mr. De La Pena's [counsel's] statement in court, at this time *the Court does express a doubt as to Mr. Marks' mental capacity to stand trial. And I now order the question of his mental competence to be determined in a special hearing* which will be held pursuant to Sections 1368.1 and 1369 of the Penal Code. Now, Mr. Marks, I advise you at this time that I've expressed a doubt as to your mental capacity to stand trial." (Italics added.) The court appointed two psychiatrists to examine defendant and to submit written reports. The court scheduled what it termed a "special trial" for May 1, 1981, to determine defendant's competency.

---

[2] Also named in the information were Margaret Moore, Leonard Brown, and Donna Uhlman Marks, defendant's wife. Each was charged with murder and the special circumstances of financial gain and lying in wait, with conspiracy to commit murder, and with various lesser offenses.

On May 1, defendant appeared in court. The following colloquy ensued between the court and defendant's counsel: The Court: "Is that set for trial?"

Defendant's Counsel: "It's set for a 1368 [competency] trial, Your Honor, and I think all 1368 matters have been resolved. Mr. Marks was referred to Dr. Trockman and Dr. Stalberg [the psychiatrists], both of which have submitted reports indicating that Mr. Marks is able to cooperate with counsel for purposes of preparing his defense. After talking to Mr. Marks this morning, I believe that's a true statement, in which case I would ask that the Court take the matter off calendar and continue the matter concurrent with the companions [the other defendants' cases] which are presently set for May 12th. Since Mr. Marks has never been arraigned, I would also ask that he be arraigned at this time, sir."

The Court: "All right."

There is no further reference in the record to any proceeding to determine defendant's competency to stand trial.

The court subsequently granted defendant's motion to sever his trial from that of his codefendants, and he was tried first. He presented an alibi defense and testified on his own behalf that he was unaware of the killing until after it occurred. According to defendant, the victim had been killed by bikers (motorcycle riders) for failing to repay a drug loan.

The jury found defendant guilty of murder and conspiracy to commit murder. The jury found to be true the financial-gain special circumstance but found to be *not* true the lying-in-wait special circumstance and the allegation that defendant had personally used a firearm to commit the murder. The jury returned a verdict of death.[3]

---

[3] On the conspiracy conviction, defendant received a sentence of life imprisonment without possibility of parole.

After defendant's trial, a jury convicted Leonard Brown and Margaret Moore of first degree murder and found true as to each of them the special circumstances of lying in wait and murder for financial gain and the allegation that a principal was armed with a firearm. Moore and Brown were also convicted of conspiracy to commit murder. Each was sentenced to life imprisonment without possibility of parole on the murder conviction and to a concurrent sentence of 25 years to life imprisonment on the conspiracy conviction. Donna Uhlman Marks pleaded no contest to an accessory charge and was sentenced to imprisonment for two years.

## DISCUSSION

### A. *The Failure to Hold a Competency Hearing Requires Reversal.*

 The trial court stated a doubt as to defendant's mental competency and pursuant to section 1368 ordered a hearing to determine whether he was competent to stand trial. The hearing was never held. Section 1368, subdivision (c) states: "[W]hen an order for a hearing into the present mental competence of the defendant has been issued, *all proceedings in the criminal prosecution shall be suspended* until the question of the present mental competence of the defendant has been determined." (Italics added.) Under the clear language of section 1368, the trial court had no jurisdiction to proceed on the charges against defendant until the court determined whether defendant was competent to stand trial. (*People v. Hale, supra,* 44 Cal.3d 531, 541.) The trial court did not state the reason why the competency hearing was not held, and we need not and may not properly speculate as to the reason. That the hearing was not held is dispositive. We also need not repeat in detail the principles so recently set forth in *Hale.* In the interest of providing guidance, however, for further proceedings in this case and for other cases in which a question as to a defendant's competency arises, we explain why the most likely reasons for the failure to hold a competency hearing do not require a different result.

The trial court most likely construed the proceedings on May 1, 1981, as a waiver of a determination of the competency issue. Defendant's counsel stated, ". . . I think all 1368 matters have been resolved." and indicated his belief that defendant was competent. As we emphasized in *Hale,* however, ". . . the matter is jurisdictional, and cannot be waived by counsel. (*People v. Pennington* (1967) 66 Cal.2d 508, 521 [58 Cal.Rptr. 374, 426 P.2d 942]; § 1368, subd. (c).) Moreover, as pointed out in *Pate* [v. *Robinson*], *supra,* 383 U.S. at page 384 [citation omitted], 'it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial.' " (*Hale, supra,* 44 Cal.3d at p. 541.) This principle is well established and understood. A widely used guide for trial judges states: "Regardless of defense counsel's opinion, a hearing on the issue of defendant's mental competence must be held if the trial judge has declared a section 1368(a) doubt which has not been *formally* resolved." (George, L.A. Super. Ct. Crim. Trial Judges' Benchbook (Jan. 1985 ed.) p. 130, italics added.) The obligation and authority to determine a defendant's competency belong to the trial court or jury, not to the defendant's counsel.

Respondent contends the trial court did not mean what it said when it expressly ordered a competency hearing under sections 1368.1 and 1369

and that it intended only to have a "preliminary" hearing to determine whether there was sufficient evidence to require a competency hearing. According to respondent, the May 1 proceeding was nothing more than this "preliminary" hearing. The argument has no premise other than sheer speculation and flies in the face of the trial court's unequivocal statement that, ". . . the Court does express a doubt as to Mr. Marks' mental capacity to stand trial. *And I now order the question of his mental competence to be determined in a special hearing which will be held pursuant to Sections 1368.1 and 1369 of the Penal Code.*" (Italics added.) The court clearly did order a competency hearing.

Respondent also contends the May 1 proceeding, when the trial court agreed to take the matter off calendar at the request of defendant's counsel, constituted a sufficient competency hearing. Implicit in this argument is the notion that the court believed it was determining defendant's competency by taking the matter off calendar. The argument is chimerical in light of the facts. At the May 1 hearing, the court did not even refer to defendant's competency. In response to the brief comments by defendant's counsel and his request to take the competency hearing off calendar and to proceed with arraignment, the court's entire statement was "All right." The court agreed only not to conduct the competency hearing. We find illogical the notion that an agreement not to hear a matter constitutes a hearing of the matter. That aside, there was no statement by the court that it had formed any opinion as to whether defendant was competent. Nor was there even a suggestion by the court that it had reviewed the psychiatrists' reports. The record does not support respondent's conclusion that the trial court viewed the May 1 proceedings as a determination of defendant's competency.

The trial court's prior proceedings demonstrate that it did not purport to determine defendant's competency on May 1. On April 2, the court ordered the competency hearing and advised defendant as follows: "You are entitled to a speedy determination on this issue, and you're entitled to a *public trial*. You're entitled to confront, that is, to face and hear all the witnesses who may testify against you, and you have the right, through your attorney, to cross-examine each witness. You have the right to present evidence on your behalf. You are entitled to have the process of this Court to compel the attendance of witnesses and/or records on your behalf. . . . You may be a witness at this *special trial,* but only if you wish to take the stand. . . . At this *trial* a determination will be made as to your ability to stand trial." (Italics added.) The court's repeated references to a *trial* of the competency issue and the court's careful description of the extensive procedures it would employ make clear the court's belief that the competency issue would not be resolved in a proceeding as cursory as that of May 1. That the trial court on May 1 did not employ the procedures it had earlier described

suggests the court likely concluded that defendant was waiving the competency issue. As we have already explained, however, there can be no valid waiver.

Even if the court did believe on May 1 that it was determining defendant's competency, the attempted determination was insufficient under sections 1368 and 1369 because the court did not make clear on the record that it was making that determination. In that regard, this case is easily distinguished from *People* v. *Maxwell* (1981) 115 Cal.App.3d 807 [171 Cal.Rptr. 579], in which a competency hearing was found to be sufficient. In *Maxwell*, as in the present case, the defendant's counsel expressed a doubt as to his client's competency to stand trial. The trial court agreed, appointed two psychiatrists to examine the defendant, and ordered a competency hearing. On the day scheduled for the hearing, the trial court stated that it had received letters from the psychiatrists informing the court that defendant had refused to be examined. Defendant's counsel stated that he had no reason to doubt the truth of those statements, and the trial court then stated: " 'All right. Then, that being the case, I don't have any reason at this time to doubt Mr. Maxwell's [defendant's] competency to stand trial. The code provides that a defendant is presumed to be competent to stand trial, and I have no evidence to the contrary. I have observed his conduct in court, and while it seems to border on the bizarre, that may very well be calculated activity on the part of defendant. So, I am going to adjourn the 1368 proceedings at this time and reinstate criminal proceedings.' " (*Id.*, at p. 810.) The Court of Appeal rejected defendant's contention that the trial court had dismissed the section 1368 proceedings without a hearing. "Although the judge did not utter the magic words 'defendant is found mentally competent,' that is exactly what he intended to and did find *in his declaration that he no longer had a doubt*." (*Id.*, at p. 812, italics added.)

Unlike in *Maxwell*, the trial court in the present case did not state its opinion as to whether defendant was competent. ■ A competency hearing is required whenever it appears the defendant may not be competent to stand trial because "the conviction of an accused person while he is legally incompetent violates [his constitutional right to] due process." (*Hale, supra*, 44 Cal.3d at p. 539 citing *Pate* v. *Robinson* (1966) 383 U.S. 375, 377 [15 L.Ed.2d 815, 86 S.Ct. 836].) This important right would be subverted if the trial court could proceed to trial without first finding on the record that the defendant is competent. Such procedure would also place an intolerable burden on reviewing courts by requiring them to speculate as to whether a trial court has made the required determination. We held in *Hale* that, "Once the trial court ordered the hearing, as it reasonably did, it could not simply vacate the order, sub silentio." (44 Cal.3d at p. 540.) We reaffirm that simple rule.

Constitutional considerations aside, section 1369 sets forth detailed procedures for a competency hearing.[4] In light of these detailed statutory procedures, it would be anomalous to find that the trial court's determination of competency could be made without a clear statement on the record as to what determination has been made.

We agree with the *Maxwell* court, *supra,* 115 Cal.App.3d 807, that no "magic words" are required of the trial court. We hold, however, that the constitutional right to due process, section 1369, and our holding in *Hale, supra,* 44 Cal.3d 531, require, at a minimum, that the trial court *expressly and unmistakably state on the record,* either orally or in writing, its determination as to whether the defendant is mentally competent to stand trial.

Because not even a semblance of a competency hearing pursuant to section 1369 was held after the trial court had expressed a doubt as to defendant's competency to stand trial, we need not and do not decide what specific hearing procedures are required under section 1369 when, as apparently occurred in this case, the defendant's counsel attempts to waive the competency issue or declines to present evidence on it. We believe, however, that it would be helpful for the trial court to make clear on the record what evidence or lack of evidence the court has considered in reaching its determination as to whether the defendant is competent and to state on the record, at least in general terms, the court's reasoning in support of its determination. Such practice would ensure the defendant's competency to stand trial has been determined and would alleviate the problem, present in this case, of the reviewing court being unable to determine from the record whether the trial court reviewed the psychiatric reports or drew any conclusions from them.

Respondent contends the failure to hold a competency hearing was not error because there was insufficient evidence for the trial court to order a competency hearing in the first instance. The argument fails in two respects. First, we acknowledge that the record of the April 2 proceeding at which the hearing was ordered indicates the trial court based its doubt as to defendant's competency only on the doubt expressed by his counsel. Defendant's counsel, however, expressly offered to submit the basis for his

---

[4] Section 1369 states in part: "A trial by court or jury of the question of mental competence shall proceed in the following order: . . . [¶] (b)(1) The counsel for the defendant shall offer evidence in support of the allegation of mental incompetence. (2) If the defense declines to offer any evidence in support of the allegation of mental incompetence, the prosecution may do so. (c) The prosecution shall present its case regarding the issue of defendant's present mental competence. (d) Each party may offer rebutting testimony, unless the court, for good reason in furtherance of justice, also permits other evidence in support of the original contention. (e) When the evidence is concluded, unless the case is submitted without final argument, the prosecution shall make its final argument and the defense shall conclude with its final argument to the court or jury."

doubt as to defendant's competency, but the court declined the offer and chose to rely on counsel's representation alone. Defendant should not be prejudiced by the lack of a more complete record on this point. Second, respondent's argument, if followed, would require us to "second guess" the trial court's finding that a hearing was required. Such result would be contrary to our holding in *Hale* that, once the hearing was ordered, it had to be held. We again conclude, as we recently did in *Hale*, that, "The sub silentio disposition of the section 1368 proceedings without a full competency hearing rendered the subsequent trial proceedings void because the court had been divested of jurisdiction to proceed pending *express* determination of the competency issue." (44 Cal.3d at p. 541, italics added.)

### B. The Trial Court Should Carefully Consider Other Alleged Errors in the Event of Retrial.

Defendant persuasively contends there were numerous reversible errors at trial. In light of our reversal of the judgment on another ground, we need not decide whether there were other errors and, if so, whether they would require reversal, either alone or in combination. As to the more significant of the alleged errors, however, we believe it necessary to provide brief guidance to the trial court for the possibility of a retrial.

#### 1. Failure to Specify Degree of Crimes

The jury's verdict did not specify the degree of murder of which defendant was convicted. Indeed, the trial court inexplicably denied defendant's requested instruction, CALJIC No. 8.70, that the jury must specify the degree of murder. ■ Section 1157, whose predecessor statute was enacted more than a century ago, requires that a jury "must find the degree of crime or attempted crime of which he [the defendant] is guilty." We have consistently held that section 1157 means that a jury must *explicitly* specify in its verdict the degree of the crime for which it convicts the defendant. (*People* v. *McDonald* (1984) 37 Cal.3d 351, 379-383 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].)

#### 2. Conspiracy Instructions

The trial court gave several highly questionable instructions to the jury on the conspiracy count. Because defendant may have been convicted by the jury of murder based on a conspiracy theory, a not unlikely possibility in light of the record, defective instructions on the conspiracy count would threaten both the murder and conspiracy convictions if we were not reversing the judgment on another ground.

a. The jury was instructed on the conspiracy count as to 14 overt acts. Many of those acts occurred after the murder, many of them significantly afterward. We seriously doubt that a post-murder act could be in furtherance of the charged conspiracy because its object, murder, had already been achieved. (*People* v. *Zamora* (1976) 18 Cal.3d 538, 560 [134 Cal.Rptr. 784, 557 P.2d 75].)

■ b. A conspirator cannot be held liable for a substantive offense committed pursuant to the conspiracy if the offense was committed *before* he joined the conspiracy. (*People* v. *Weiss* (1958) 50 Cal.2d 535, 564-565 [327 P.2d 527]; see generally Perkins, *The Act of One Conspirator* (1974) 26 Hastings L. J. 337, 344-345.) The trial court, however, did not instruct the jury that it must find defendant joined the conspiracy before the murder. ■ A trial court has a sua sponte duty to instruct on the general principles of law relevant to the issues raised by the evidence. (*People* v. *Wilson* (1967) 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820].) There was evidence suggesting that defendant did not join the alleged conspiracy until after the murder.

c. The court instructed the jury with CALJIC No. 6.10 (1974 rev.), which states in part: "A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the public offense of murder . . . ." The court on its own motion and without explanation deleted from the standard instruction the additional required language in the instruction that the agreement must be "*with the further specific intent to commit such offense.*" (Italics added.) ■ Conspiracy requires a dual specific intent: "(a) the intent to agree, or conspire, and (b) the intent to commit the offense, which is the object of the conspiracy." (*People* v. *Horn* (1974) 12 Cal.3d 290, 296 [115 Cal.Rptr. 516, 524 P.2d 1300].) This dual intent is carefully explained in the Use Note to CALJIC No. 6.10. We can only speculate as to why the trial court chose to modify the standard instruction. As a result of the deletion, the instruction was silent as to the intent required to commit the underlying crime of murder. We caution the trial court not to modify the standard instruction in the event of retrial.

3. *Jury Instructions on Accomplice Liability*

Defendant contends the trial court erroneously instructed the jury on the intent required to find him liable for aiding and abetting. The challenged instructions were CALJIC Nos. 3.00 (1979 rev.) and 3.01 (1980 rev.). Respondent implicitly concedes the error. CALJIC Nos. 3.00 and 3.01 have been amended since our decision in *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], and we anticipate correct instructions will be given if there is a retrial.

### 4. *Evidentiary Instructions*

Defendant complains of the trial court's evidentiary instructions, or lack of them, in several respects. We briefly discuss for the trial court's benefit four of defendant's contentions.

a. Some of the prosecution's witnesses testified as to incriminating out-of-court statements allegedly made by defendant. He contends the trial court should have sua sponte instructed the jury with CALJIC No. 2.71 (1980 rev.), which provides that, "Evidence of an oral admission of the defendant should be viewed with caution." "Admission" is defined in CALJIC No. 2.71 as, "a statement made by defendant other than at his trial which does not by itself acknowledge his guilt of the crime(s) for which he is on trial, but which statement tends to prove his guilt when considered with the rest of the evidence." If a defendant's oral admissions are introduced into evidence, the trial court must sua sponte deliver the instruction that evidence of those admissions must be viewed with caution. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 455 [99 Cal.Rptr. 313, 492 P.2d 1]; *People* v. *Ford* (1964) 60 Cal.2d 772, 799 [36 Cal.Rptr. 620, 388 P.2d 892]; Use Note to CALJIC No. 2.70 (1980 rev.).)

b. The trial court delivered CALJIC No. 2.62 (1980 rev.), which states in part: "If you find that he [defendant] failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence . . . ." Defendant contends he did not fail to explain or to deny any important evidence against him and that he testified extensively to a version of the events that contradicted the prosecution's case in all important respects. Defendant's contention is persuasive. If there is a retrial, the trial court should carefully consider whether this instruction is appropriate.

c. Much, perhaps most, of the evidence against defendant was from persons who were suspiciously involved in the events of this case. The trial court would have been well advised to instruct the jury to consider whether those persons were defendant's accomplices. If they were, the jury should have been provided with the standard cautionary instructions as to accomplice testimony.

d. The trial court instructed the jury with CALJIC No. 2.11.5 that, "There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial. [¶] You must not discuss or give any consideration as to why the other person is not being prosecuted in this trial or whether he has been

or will be prosecuted." The Use Note to CALJIC No. 2.11.5 states, "This instruction is *not* to be used if the other person is a witness for either the prosecution or defense." (Italics added.) Because there was evidence that several of the witnesses against defendant were or may have been involved in the crimes charged against defendant, the trial court should follow the Use Note's clear admonition if any such witnesses testify on retrial.

## CONCLUSION

The judgment is reversed in its entirety. The cause is remanded for further proceedings pursuant to sections 1368 and 1369 to determine defendant's present competency to stand trial.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arguelles, J., and Kaufman, J., concurred.