Filed 2/10/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JOHN Z., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN Z.,<br><br>        Defendant and Appellant. | A138728<br><br>(Contra Costa County<br>Super. Ct. No. J12-01036)<br><br>A140343 |
| In re JOHN Z., a Minor, on Habeas Corpus. | |

The People charged John Z. with felony attempted burglary in a juvenile wardship petition. During proceedings in November 2012, John's counsel declared a doubt as to John's competency and the court invoked Welfare and Institutions Code section 709, [1] ordering suspension of proceedings and appointing an expert to evaluate John. The expert's February 2013 report stated that John had an IQ of 63 and was not presently competent, but the court found the report lacking in detail. Another expert was appointed to evaluate John, but a second report was never prepared for the court. Meanwhile, John was involved in two alleged batteries at school which were not immediately charged.

On April 18, 2013, when the People offered to allow John to plead to three misdemeanors and drop the felony charge, John's counsel asked the court's leave to withdraw her doubt as to John's competency. After John's counsel and the court

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

questioned John on the record, the court accepted John's admissions and allowed John's counsel to withdraw her doubt.

On appeal John contends that (1) there was insufficient evidence that John was competent when he entered his pleas; (2) the juvenile court may not adopt defense counsel's belief that John could assist in his own defense as a judicial finding of competence; (3) the court violated the requirement of section 709, subd. (f); and (4) defense counsel was ineffective when she argued the disposition without having copies of police reports of the batteries that John admitted.

We conclude that the juvenile court had no jurisdiction to allow John's counsel to withdraw her doubt and could not make a competency determination within the confines of section 709 without expert input. The order adjudging John to be a ward of the court, pursuant to section 602, is reversed. We direct the trial court to withdraw John's admissions and order proceedings in conformity with section 709. We need not examine John's other assertions of error.

John has also filed a separate petition for writ of habeas corpus which seeks relief no different from that which he seeks on appeal. With our decision here, John's petition for writ of habeas corpus is denied as moot.

## BACKGROUND

On July 25, 2012, the People filed a juvenile wardship petition, pursuant to section 602, subdivision (a), alleging that John had attempted a first degree residential burglary. (Pen. Code, §§ 459, 460, subd. (a), 664.) John, who was then 15 years old, had been with two friends who asked him to act as lookout while they broke into a house and John agreed, though he told police that he thought his friends were "playing" until he heard the sound of an alarm from the house. John and his friends left the scene, but John was apprehended because a witness followed him.

On September 26, 2012, the court found John eligible for deferred entry of judgment (DEJ). On November 14, 2012, the court (Commissioner Stephen F. Houghton) held a hearing for John to enter a plea for DEJ. The court asked John if he was admitting the attempted burglary by his own choice and John answered, "No."

2

John's counsel explained that she had worked hard to help John understand the proceedings, but that issues remained and she declared a doubt as to John's competency. The court suspended proceedings, pursuant to section 709, and, on November 26, appointed John Rouse, Ph.D. to perform an evaluation of John.

On January 17, 2013, Dr. Rouse informed the court that he had been unable to evaluate John because John's mother failed to bring John for evaluation on each of three days he had scheduled with her. On February 5, 2013, the court appointed Edward M. Meshberg, Ph.D. to evaluate John and admonished John's mother to ensure that the evaluation occurred.

On March 15, 2013, Dr. Meshberg submitted a report, based upon a 90-minute evaluation, that stated: "Toward the end of the assessment [John] reported he was bored and didn't attempt to answer questions he was asked, even when reminded of the potential consequences of what he is facing." Dr. Meshberg made "rule out" diagnoses of mood disorder, attention deficit disorder, and mild mental retardation. John's IQ was reported as "63 on the KBIT-2." Dr. Meshberg concluded that John was "not competent to help his attorney defend him and not competent to stand trial, at this time" and recommended that John be given court room training in how a trial proceeds and how the various outcomes can affect his life.

At a hearing on March 19, 2013, the court (Hon. Rebecca C. Hardie) stated that that it "found the report of Dr. Meshberg lacking in sufficient detail and not very informative or helpful." The court also considered a probation department report stating that John had significant absences from school and had been involved in two fights there. The court placed John on home supervision with electronic monitoring. The matter of competency was continued.

On March 26, 2013, the court referred John to Marlon Griffith, Ph.D. for a further competency evaluation.

On March 29, the probation department reported that two days earlier John had left his home without the approval of his probation officer. Additionally, John had been suspended from school and had failed to inform his probation officer.

3

On April 2, 2013, the court (Hon. Barry Baskin) referred John to Karen Franklin, Ph.D. because Dr. Griffith would only evaluate minors who are at least 17 years old.

On April 16, 2013, the court[2] ordered that John be detained because the probation department reported that John's electronic monitor had been removed and a witness reported that it had been thrown "through a car windshield." John admitted removing the monitor, but not throwing it at a moving car.

On April 18, 2013, John's counsel informed the court that the district attorney had offered to allow John to admit three misdemeanor counts and to dismiss the felony charge. John's counsel believed that John understood the situation and she wished to withdraw her doubt as to John's competency so that John could enter a plea. She told the court: "I've come to realize that a lot of that with John is not about not understanding the process, it's more about the vocabulary that's used. . . . [W]hen anybody will use certain words, he just will not understand them. He doesn't understand the word 'waive.'. . . [He] doesn't understand 'cross-examination.' And I don't think that he ever will. He has an [individualized education plan]. There's definitely a block there but I don't think that he is incompetent. I think that it's really a matter of explaining things at a much more basic level." The court stated that it was happy to question John on the record, but added: "It's a significant matter for me in vacating a prior order. . . . [I]t concerns me because when there is a doubt, we have an obligation to the minor to make sure that he or she understands."

Following a recess, the court stated that it had reviewed the case file and found Dr. Meshberg's report not to be "very helpful on the question of whether the minor was incompetent or not. The doctor concluded that he was, but there was, in my view, very little information in there about why."

John's counsel responded: "Well, I think that [Dr. Meshberg] addresses his low IQ and lack of focus, and I do think that that could be enough to believe that he is not competent. You know, I'm not sure that he does have to go beyond that, you know, if he

---

[2] All proceedings on and after April 16, 2013 were conducted by the Hon. Lewis A. Davis.

4

stops answering questions and, you know, has this extremely low IQ, I do think that could be enough. [¶] . . . I'm troubled a lot because John is in custody now and, you know, I'm concerned about him. . . . I'm saddened that he's here and I think that—I don't think he's ever going to be competent in the way that we want him to be. [¶] I don't—there's a developmental delay. He doesn't need medications. You know, I don't think he needs training. I think things need to be just explained to him very slowly. And, you know, word choice needs to be very, you know, thoughtful and basic. And so I just, you know—and there is this offer of misdemeanors. That was what I was trying to get all along even before, you know, proceedings were suspended. It's my advice that he takes it. You know, he understands. He does want to admit the charges. He understands that. He doesn't want a trial. You know, so I'm just—I'm just a little bit torn because, you know, I do want to go forward with him forward today with this so that he can move on."

John's counsel and the court then proceeded to ask John questions. John was able to identify his counsel as his attorney and stated that her role was to try "to get me up out of here." John did not recognize the district attorney and was not able to explain the role of a prosecutor. John said it was the "police" who charged him with crimes. He explained that the role of the judge was to "tell you how long you got—like, how long you got to spend your time in here." According to John, "A trial is people that come in and they choose, like, if you are guilty or—if you are guilty or not."[3]

John said that a felony was worse than a misdemeanor and that he wanted to admit he was guilty rather than go to trial. The court asked John why a felony was more serious than a misdemeanor and John replied: "A felony too much serious because it's much worser and stuff. And a misdemeanor is more better to me than a felony. . . . Cause a felony, like, you spend more time up in here." John said he understood that by admitting the charges, a trial would not happen and that he wanted to admit he was guilty "[b]ecause a trial—at trial, it's more worser."

---

[3] Neither John's counsel nor the court asked John if he understood that if the matter proceeded to trial, he would be tried by the judge and not by a jury.

5

The court then proceeded to ask whether John understood standard *Boykin/Thal* admonitions. (*Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.)

The prosecutor moved to amend the petition to allege misdemeanor attempted second degree burglary as count 2 (Pen. Code, §§ 459, 460, subd. (b), 664) and two misdemeanor batteries on school grounds as counts 3 and 4 (Pen. Code, § 243.2, subd. (a).) The court granted this motion and dismissed the original count of felony attempted burglary. John entered pleas of no contest to the three misdemeanor counts. The court stated: "The court accepts each of the no contest pleas as admissions. The court finds that the minor [has] been advised of his constitutional rights. He's made a knowing, intelligent and voluntary waiver of those rights. He's entered his pleas of no contest to counts 2, 3, and 4 in a knowing, intelligent and voluntary manner." The court also stated: "For the record, I should say that I'm granting this—obviously, by having [taken] his pleas I've granted Ms. Murray's motion to withdraw her declaration of a doubt. The record shows that detailed questioning of the minor conducted by Ms. Murray and by the court, I am satisfied that he understands the proceedings. Ms. Murray, you represent that he's been in a position to assist you, if necessary?" John's counsel answered "yes" and the court stated: "So I adopt that as my finding. And that's the reason for the unusual procedure of allowing you to withdraw your declaration of a doubt."

At a disposition hearing on May 2, 2013, the court adjudged John a ward of the court. John was committed to the Orin Allen Youth Rehabilitation Facility for nine months. A motion to reconsider disposition was denied by the court on June 6, 2013.

A timely notice of appeal was filed on May 20, 2013.

### DISCUSSION

To be mentally competent to stand trial, a defendant "must be capable of understanding the nature and purpose of the proceedings against him," "must comprehend his own status and condition in reference to such proceedings," and "must be capable to assist his attorney in conducting his defense, or be able to conduct his own defense in a rational manner." (*People v. Conrad* (1982) 132 Cal.App.3d 361, 369-370.) The conviction of an accused person while he is legally incompetent violates due process

6

and state procedures must be adequate to protect this right. (*Pate v. Robinson* (1966) 383 U.S. 375, 378.) The standard for competency is no different for a defendant who is pleading guilty than for one who is going to trial. (*Godinez v. Moran* (1993) 509 U.S. 389, 397-398.)

The " 'essentials of due process and fair treatment' " apply to juvenile proceedings as well as to adult criminal proceedings. (*In re Gault* (1967) 387 U.S. 1, 30.) Juvenile incompetency is not defined solely "in terms of mental illness or disability," but also encompasses developmental immaturity, because minors' brains are still developing. (*Timothy J. v. Superior Court* (2007) 150 Cal.App.4th 847, 860.)

In California juvenile proceedings, section 709 governs competency determinations and provides, in relevant part: "(a) During the pendency of any juvenile proceeding, the minor's counsel or the court may express a doubt as to the minor's competency. A minor is incompetent to proceed if he or she lacks sufficient present ability to consult with counsel and assist in preparing his or her defense with a reasonable degree of rational understanding, or lacks a rational as well as factual understanding, of the nature of the charges or proceedings against him or her. If the court finds substantial evidence raises a doubt as to the minor's competency, the proceedings shall be suspended. [¶] (b) Upon suspension of proceedings, the court shall order that the question of the minor's competence be determined at a hearing. The court shall appoint an expert to evaluate whether the minor suffers from a mental disorder, developmental disability, developmental immaturity, or other condition and, if so, whether the condition or conditions impair the minor's competency. The expert shall have expertise in child and adolescent development, and training in the forensic evaluation of juveniles, and shall be familiar with competency standards and accepted criteria used in evaluating competence. The Judicial Council shall develop and adopt rules for the implementation

7

of these requirements."[4]  Incompetency must be established by a preponderance of the evidence.  (§ 709, subd. (c).)

Section 709 makes no provision for a court to withdraw its order suspending proceedings so that the minor's competency can be determined at a hearing with input from an expert.  We find no cases that deal with whether, or under what circumstances, a juvenile court has the discretion to withdraw orders made pursuant to section 709, subdivisions (a) and (b).  However, cases concerning due process requirements when determining competency in the adult criminal context are instructive.

In adult criminal proceedings, the question of competence is governed by Penal Code section 1368, which provides, in relevant part:  "(a)  If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent.  If the defendant is not represented by counsel, the court shall appoint counsel.  At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time.  [¶]  (b)  If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369.  If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing.  Any hearing shall be held in the superior court.  [¶]  (c)  Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined."  Like Welfare and Institutions Code section 709, Penal Code

---

**4**  The Judicial Council addressed the requirement placed upon it in section 709, subdivision (b), in California Rules of Court, rule 5.645.

8

section 1369 requires the appointment of a psychiatrist or psychologist to evaluate the defendant's competency.

Welfare and Institutions Code section 709 was introduced into the code in 2010. (Stats. 2010, ch. 671, § 1.) Prior to 2010, the state conceded, and the California Supreme Court did not challenge, that "the protective reach of Penal Code section 1368 extend[ed] to section 602 proceedings in juvenile court." (*In re Ramon M.* (1978) 22 Cal.3d 419, 430, fn. 14, superseded by statute on another ground as stated in *People v. Phillips* (2000) 83 Cal.App.4th 170, 173.)

The California Supreme Court has held that once substantial evidence points to the incompetency of an accused, "no matter how persuasive other evidence—testimony of prosecution witnesses or the court's own observations of the accused—may be to the contrary," the accused has a constitutional right to a competency hearing. (*People v. Pennington* (1967) 66 Cal.2d 508, 518.) "[W]hen defendant has come forward with substantial evidence of present mental incompetence, he is entitled to a [Penal Code] section 1368 hearing as a matter of right . . . . The judge then has no discretion to exercise." (*Ibid.*)

In *People v. Hale* (1988) 44 Cal.3d 531 (*Hale*) the trial court expressed a doubt as to defendant's competency on the record and appointed psychiatrists to evaluate defendant. (*Id.* at p. 535, fn. 5.) However, no hearing was ever held and after continuances the defendant entered a plea and the case proceeded to trial. (*Id.* at p. 536.) The *Hale* court held that "[o]nce the trial court ordered the hearing, as it reasonably did, it could not simply vacate the order, sub silentio." (*Id.* at p. 540.) The People asserted that defendant's changed mental condition obviated the need for a competency hearing, but the court held that "[t]his argument [was] misplaced. As stated earlier, [Penal Code] section 1368 'requires that if at any time during the pendency of a criminal case a doubt arises as to mental competency, all criminal proceedings must be suspended *until a hearing has been conducted to determine whether the defendant is presently mentally competent.*' [Citation.] Indeed, once a doubt has arisen as to the competence of the defendant to stand trial, the trial court has no jurisdiction to proceed with the case against

9

the defendant without first determining his competence in a [Penal Code] section 1368 hearing, and the matter cannot be waived by defendant or his counsel." (*Id.* at pp. 540-541.)

In *People v. Marks* (1988) 45 Cal.3d 1335 (*Marks*), the court reiterated its holding in *Hale* that "once a trial court has ordered a competency hearing pursuant to [Penal Code] section 1368, the court lacks jurisdiction to conduct further proceedings on the criminal charge or charges against the defendant until the court has determined whether he is competent. This determination is mandated by the federal constitutional requirement of due process and by unambiguous California statutes." (*Id.* at p. 1337.) In *Marks*, defense counsel "expressed severe doubt" as to defendant's competency and based on that representation, the trial court expressed a doubt as to defendant's competency on the record and ordered a competency hearing. (*Id.* at p. 1338.) The trial court appointed two psychiatrists to examine defendant. (*Ibid.*)

Before a competency hearing was held, defense counsel told the trial court, " 'I think all [Penal Code section] 1368 matters have been resolved' " because the reports of both the appointed psychiatrists indicated that defendant was competent. (*Marks*, *supra*, 45 Cal.3d at p. 1339.) There was no further reference in the record to any proceeding to determine defendant's competency to stand trial. (*Ibid.*) Defendant was tried by a jury and convicted, but the *Marks* court reversed because a Penal Code section 1368 hearing had not been held. (*Marks*, at pp. 1339-1340.)

The *Marks* court believed that the trial court most likely construed defense counsel's statement that all Penal Code section 1368 matters had been resolved as a waiver of the competency issue. (*Marks*, *supra*, 45 Cal.3d at p. 1340.) The court stated: "As we emphasized in *Hale*, however, '. . . the matter is jurisdictional, and cannot be waived by counsel. [Citations.] . . .' ' [Citation.] This principle is well established and understood. A widely used guide for trial judges states: 'Regardless of defense counsel's opinion, a hearing on the issue of defendant's mental competence must be held if the trial judge has declared a [Penal Code] section 1368[, subdivision] (a) doubt which has not been *formally* resolved.' (George, L.A. Super. Ct. Crim. Trial Judges' Benchbook (Jan.

10

1985 ed.) p. 130, italics added.)  The obligation and authority to determine a defendant's competency belong to the trial court or jury, not to the defendant's counsel." (*Marks*, at p. 1340.)

We discern no reason why the demands of due process would allow a court to be any less rigorous in juvenile proceedings than *Hale* and *Marks* require in adult proceedings.  The People do not argue otherwise.  Instead, the People argue that "*Hale* and *Marks* are inapplicable here because there was no longer a doubt of competency raised once defense counsel withdrew her doubt.  The court never formally raised a doubt of appellant's competency.  Thus, the procedure of section 702 [*sic*] to determine competency and further hearing on the matter was no longer required.  Defense counsel withdrew her doubt once she realized that she could properly communicate with appellant and that he had a basic understanding of the proceedings."

The People's argument is not persuasive.  The court explicitly invoked section 709 after John was apparently unable to understand a simple question posed by the court and John's counsel expressed a doubt as to John's competency.  The court, as provided in section 709, subdivisions (a) and (b), suspended proceedings and appointed an expert to evaluate John so that the question of John's competency could be determined at a hearing.  By taking these actions, we must presume that, as provided in section 709, subdivision (a), the court found that substantial evidence raised a doubt as to John's competency.[5]  Because there was substantial evidence indicating that John was not

---

[5] A court has the discretion to order a competency hearing even if evidence of incompetency does not rise to the level of "substantial evidence," which has been defined as "evidence that raises a reasonable doubt concerning the defendant's competence to stand trial." (*People v. Welch* (1999) 20 Cal.4th 701, 738, 742, overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89.)  Here, nothing in the record indicates that the court determined that John's present incompetence was not supported by substantial evidence and that the court invoked section 709 solely at its own discretion.  The People cite no cases that would support a conclusion that counsel's statement of doubt as to John's competency, together with John's apparent inability to understand a simple question posed by the court, does not constitute substantial evidence.  If there were any doubt whether substantial evidence supported a finding of incompetency, that doubt was removed by Dr. Meshberg's report, which found John not

11

presently competent, a competency hearing was required and under *Hale* and *Marks*, that hearing could not be waived by John's counsel, which is what she attempted to do by withdrawing her doubt as to John's competency.

What distinguishes this case from *Hale* and *Marks*[6] is that the court examined John on the record and, based on those responses, accepted John's pleas and found that John had made a knowing, intelligent, and voluntary waiver of his rights. Based on the statement by John's counsel that John was able to assist her, the court allowed John's counsel to withdraw her doubt about John's competency. The People appear to regard these proceedings as a determination of competency.

The court understood that John's counsel's request to withdraw her doubt as to John's competency was unusual. The record presents no reason to doubt that John's counsel and the court acted in what they believed to be John's best interest, and we appreciate that the court understood that a minor's counsel is often in the best position to ascertain whether the minor understands and can assist in his or her own defense. Nevertheless, as we have discussed, John's right to due process required the court to conduct a competency hearing and, assuming that the court did make a competency determination, as the people argue, that determination was not made in accord with section 709.

Both John's counsel and the court questioned John on the record.[7] The court also relied upon the statement of John's counsel that John was able to assist her. What was

---

to be presently competent. (See *Hale*, *supra*, 44 Cal.3d at p. 540 ["these psychiatric reports . . . constituted 'substantial evidence' within the ambit of section 1368"]; *People v. Pennington*, *supra*, 66 Cal.2d at p. 519.)

[6] Another distinguishing feature is that John admitted charges alleged in the section 602 petition while the defendants in *Hale* and *Marks* proceeded to a jury trial. This is not a relevant difference, however, because what violates due process is the conviction of a defendant who is legally incompetent. As we have noted above, the demands of due process in the determination of competency do not distinguish between the routes taken to conviction.

[7] The court's questioning, for the most part, consisted of *Boykin/Thal* admonitions. Because these admonitions only call for an expression of understanding

missing, if the court indeed made a competency determination, was what both Penal Code section 1369 and Welfare and Institutions Code section 709 clearly intend to be the center of such a determination—the reports and/or testimony of experts who have evaluated the defendant for legal competency.  The centrality of expert reports is demonstrated by the rule that a formal adversary hearing on the issue of competence is not required if the prosecutor and defense counsel stipulate that the competency determination be made by the court based on the written reports of the court-appointed experts.  (*People v. Weaver* (2001) 26 Cal.4th 876, 903-905.)

Because a section 709 hearing was required and expert opinion in the form of reports and/or testimony plays a central role, the court had two options:  either schedule a formal competency hearing at which Dr. Meshberg could testify concerning his report, because the court found the written report to be inadequate, or wait for the evaluation and report by Dr. Franklin.  The court did not have jurisdiction to allow John's counsel to withdraw her doubt concerning John's competency and could not make a competency determination within the confines of section 709 without considering the evidence of experts.

from the defendant and do not call for the defendant to explain procedures or concepts, they have very limited usefulness in a determination of competency.

**DISPOSITION**

The order adjuding John to be a ward of the court, pursuant to section 602, is reversed.  The trial court shall withdraw John's admissions and shall order proceedings in conformity with section 709.

_____
Brick, J.*

We concur:


_____
Kline, P.J.


_____
Richman, J.

14

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Lewis A. Davis |
| Attorney for Appellant | Patricia N. Cooney, under appointment by the Court of Appeal |
| Attorneys for Respondent | Attorney General of California Kamala D. Harris |
| | Dane R. Gillette Chief Assistant Attorney General |
| | Gerald A. Engler Senior Assistant Attorney General |
| | Eric D. Share Supervising Deputy Attorney General |
| | Huy T. Luong Deputy Attorney General |