Filed 12/10/19

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONNIE EARL HOWELL, SR.,<br><br>    Defendant and Appellant. | F078241<br><br>(Super. Ct. No. F18902563)<br><br><br>**OPINION** |

**THE COURT**

APPEAL from an order of the Superior Court of Fresno County. Jonathan M. Skiles, Judge.

Conness Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup>    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.

## INTRODUCTION

Appellant Ronnie Earl Howell, Sr., contends the trial court order authorizing the involuntary administration of antipsychotic medication is not supported by substantial evidence and must be reversed. In an issue of first impression, Howell also contends that Senate Bill No. 1187 (2017–2018 Reg. Sess.) (Sen. Bill 1187) is retroactive and the maximum term of commitment for restoration of his competency should be reduced from three to two years.

We conclude substantial evidence supports the order for involuntary administration of antipsychotic medication. In the published portion of this opinion, we also conclude that Sen. Bill 1187 is not retroactive.

## FACTUAL AND PROCEDURAL SUMMARY

The Fresno County District Attorney filed a complaint in case No. F18902563 (case No. 563) on April 17, 2018. The complaint charged Howell in count 1 with felony driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)); in count 2 with driving with an elevated blood alcohol level (Veh. Code, § 23152, subd. (b)); and in count 3 with hit and run driving (Veh. Code, § 20002, subd. (a)). Vehicle Code section 23550.5, subdivision (a) enhancements, alleging a prior Vehicle Code section 23152, subdivision (b) conviction, were alleged as to counts 1 and 2. It also was alleged that Howell had suffered numerous prior felony convictions and had served prior prison terms.

On July 10, 2018, the trial court appointed the public defender to represent Howell. Howell pled not guilty to the charges and denied all allegations and enhancements. The public defender declared a conflict and on July 13, 2018, the public defender was relieved as counsel and alternate counsel was appointed to represent Howell.

2

Howell was the defendant in another criminal proceeding in case No. F18902159 (case No. 159) where a doubt as to Howell's competency to stand trial had been declared, pursuant to Penal Code[1] section 1368.[2] Defense counsel declared doubt as to Howell's competency to stand trial in the current case and the trial court ordered criminal proceedings suspended and instituted section 1368 proceedings.

On July 18, 2018, the trial court appointed Howard Terrell, M.D., to examine Howell and assess his competency to stand trial. The competency report was due August 10, with a hearing on competency scheduled for August 15, 2018. Howell filed a handwritten objection to the section 1368 proceeding.

Terrell submitted his report on August 6, 2018. Terrell recommended the trial court find Howell incompetent to stand trial. During the examination, Howell appeared to be responding to internal stimuli, indicated he was having problems with his memory, and initially claimed to be 30 years younger than his actual age.

Howell reported that he has been under treatment for schizophrenia, anxiety, and "[d]eep depression." He had been hospitalized twice, for about nine months each time, for psychiatric reasons. Howell reported suffering visual hallucinations off-and-on for the past three years and reported auditory hallucinations as well. Howell had been prescribed antipsychotic medication in the past but complained it had been discontinued and "he [has] been feeling much worse ever since."

Howell reported "episodes of rapid thoughts and speech with the ability to go up to two days without any need for sleep." He denied ever using "street drugs" but admitted to consuming up to six cans of beer, 16 ounces each, per day. When asked

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Howell is the defendant in two other appeals pending before this court in case Nos. F075026 and F078070.

3

about any history of paranoia, Howell paused and appeared to be responding to internal stimuli.

When asked about the charges against him, Howell erroneously believed he was charged with theft. Terrell questioned Howell about his understanding of the actual charges pending against him. Howell told Terrell "in a paranoid manner that he does not trust his attorney." Howell believed attorneys in the past had "plotted and conspired against him."

Terrell described Howell as someone "who showed frequent evidence of response to internal stimuli as well as paranoia. Impressed me as acutely psychotic." Howell's "[a]ssociations fluctuated from coherent to loose and tangential with a paranoid theme." His moods "fluctuated from euthymic to upset and paranoid." Terrell found Howell's reality contact to be poor and memory to be poor to fair.

Terrell's professional opinion was that Howell "suffers from a psychotic mental disorder, which renders him unable to assist his attorney in a rational manner." Howell needed antipsychotic medication if he was to be restored to mental competency. The evaluation noted that Howell "did not appear to be imminently suicidal or homicidal." Terrell expressed concern, however, about Howell's "irrational and psychotic state of mind as well as his long history of felonious behavior." Terrell opined that Howell "will be at substantial risk of harming himself or others in the foreseeable future" if not taking antipsychotic medication. Terrell also opined that Howell was not "mentally competent to give informed consent." Terrell recommended the trial court issue an order authorizing the administration of antipsychotic medication "with or without consent."

Terrell was "concerned about the possibility of early dementia." Terrell stated, "If it is determined that he has dementia, antipsychotic medication can increase the rate of sudden death. A wise psychiatrist would provide antipsychotic medication only if it is believed that the potential risks of antipsychotic medication are substantially outweighed

4

by the potential benefits." Terrell recommended that Howell undergo a "dementia workup by a qualified neurologist."

At the August 15, 2018, hearing to consider the evaluation and determine competency, both the prosecution and the defense submitted on the report. The trial court found Howell was not competent and ordered criminal proceedings continue to be suspended. The parties agreed to follow the placement order that had been filed in case No. 159, where Howell had already been committed to the state hospital. Howell was ordered committed to the state hospital until competency was restored. The placement evaluation in case No. 159 provided that antipsychotic medication be administered involuntarily if necessary, as authorized by court order.

On August 21, 2018, an order was filed in the current case committing Howell to the state hospital. The order stated that Howell had been found mentally incompetent pursuant to section 1370. The order provided that the state hospital was to file a written report within 90 days setting forth an opinion concerning the mental competency of Howell and to file such reports every six months thereafter. In addition, the order reiterated the stipulation of the parties adopting the commitment order from case No. 159 and stated the maximum term of commitment exceeds three years. The order further provided:

> "The Court authorizes the treatment facility to involuntarily administer antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist for the following reason: The defendant lacks the capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the patient will result."

Howell filed a notice of appeal on October 3, 2018. He filed a second notice of appeal on October 9, 2018.

5

## DISCUSSION

Howell raises two issues in this appeal. He contends the trial court order authorizing the involuntary administration of antipsychotic medication is not supported by substantial evidence and must be reversed. In an issue of first impression, Howell also contends that Sen. Bill 1187 is retroactive and the maximum term of commitment for restoration of his competency should be reduced from three to two years.

**I.     Substantial Evidence Supports the Order**[*]

*Standard of Review*

A competent adult has a common law and constitutional right to refuse medical treatment, including the administration of antipsychotic drugs. (*Riggins v. Nevada* (1992) 504 U.S. 127, 143; *In re Qawi* (2004) 32 Cal.4th 1, 14.) However, a criminal defendant may forcibly be treated with antipsychotic medication if: (1) important governmental interests are at stake; (2) involuntary medication will significantly further the concomitant state interests of timely prosecution and a fair trial; (3) involuntary medication is necessary to further those interests; and (4) administration of the drugs is medically appropriate. (*Sell v. United States* (2003) 539 U.S. 166, 180–183; *People v. O'Dell* (2005) 126 Cal.App.4th 562, 569.)

The trial court must conduct a hearing and may issue an order authorizing involuntary medication be administered if five factors are present: (1) the defendant is charged with a serious crime; (2) involuntary administration of antipsychotic medication is likely to render the defendant competent to stand trial; (3) the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or assist counsel; (4) less intrusive treatments are unlikely to have

---

[*]     See footnote, *ante*, page 1.

6

the same result; and (5) antipsychotic medication is in the defendant's best medical interest. (*Carter v. Superior Court* (2006) 141 Cal.App.4th 992, 1001.)

"We review an order authorizing involuntary administration of antipsychotic medication for substantial evidence." (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1016.) Substantial evidence is evidence of legal significance, reasonable in nature, credible, and of solid value. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) We draw all reasonable inferences in support of the trial court's findings. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082.) We review the record in the light most favorable to the order. (*Ibid.*) We do not reweigh the evidence or decide the credibility of witnesses. (*Id.* at pp. 1082–1083.)

*Analysis*

Here, Howell acknowledged that he has been under treatment for schizophrenia, anxiety, and depression. He reported auditory and visual hallucinations. Howell apparently was aware of his situation and acknowledged the existence of his condition. Howell also complained that his antipsychotic medication had been discontinued, and that he felt "much worse" since then.

However, Howell also presented as acutely psychotic, paranoid, and frequently responding to internal stimuli. His thought processes fluctuated from coherent to loose and tangential. Terrell found Howell to exhibit poor judgment and insight. He had an irrational and psychotic state of mind. Terrell concluded that Howell was not competent to give informed consent for psychotropic medication.

California Rules of Court,[3] rule 4.130, provides that when the trial court appoints an expert to examine a defendant and determine mental competency to stand trial, the expert's report is to be submitted to the trial court, counsel for the defendant, and the prosecution. (Rule 4.130(d)(2).) The expert's report must include a statement on

---

**3** References to rules are to the California Rules of Court.

7

"whether the defendant has capacity to make decisions regarding antipsychotic or other medication." (Rule 4.130(d)(2)(E).)

The parties submitted the matter on the basis of Terrell's report. Terrell's report addressed each of the five factors set forth in section 1370, subdivision (a)(2)(B)(i)(III). The report noted that Howell had been charged with a felony offense, opined that Howell could not be restored to competency without the use of antipsychotic medication, and stated that Howell was not mentally competent to give consent for psychotropic medication. The report also stated it was "very unlikely" use of antipsychotic medication would worsen Howell's mental condition or his ability to assist defense counsel in a rational manner. Without the administration of antipsychotic medication, Terrell opined that Howell was at substantial risk of harming himself or others and that "less-invasive intervention" would not be adequate to restore mental competency.

A single witness's testimony is sufficient to uphold a finding. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) The "centrality of expert reports" to the trial court's determination of competency "is demonstrated by the rule that a formal adversary hearing on the issue of competence is not required if the prosecutor and defense counsel stipulate that the competency determination be made by the court based on the written reports of the court-appointed experts." (*In re John Z.* (2014) 223 Cal.App.4th 1046, 1058, citing *People v. Weaver* (2001) 26 Cal.4th 876, 903–905.) Terrell's report supports the trial court's order for involuntary administration of psychotropic medication.

Furthermore, the parties stipulated to adopting the commitment order that was used in case No. 159. The evaluation provided that antipsychotic medication be administered involuntarily if necessary. Presumably, Howell's commitment in case No. 159 provided for involuntary administration of antipsychotic medication.

8

Terrell's report supports the trial court's order that Howell be involuntarily medicated, if necessary, and constitutes substantial evidence supporting the trial court's order. (*People v. Fisher*, *supra*, 172 Cal.App.4th at p. 1016.)

## II.     Senate Bill No. 1187

On September 30, 2018, the Governor approved Sen. Bill 1187, which went into effect on January 1, 2019. This bill amends section 1370 to reduce the maximum term of commitment for competency restoration to two years instead of three. (Stats. 2018, ch. 1008, § 2.)

On February 13, 2019, appellate counsel directed a letter to the trial court notifying the court that Sen. Bill 1187 provides that the maximum term of commitment for restoration to competency is two years. Appellate counsel requested that the superior court modify the commitment order to reflect a maximum commitment period of two years. The trial court did not act on the letter.

Howell contends that Sen. Bill 1187 is retroactive and the maximum term of commitment for restoration of his competency should be reduced from three to two years.

*Analysis*

Section 3 states that Penal Code provisions do not apply retroactively unless they specifically so state. In the case of *In re Estrada* (1965) 63 Cal.2d 740, 747–748 (*Estrada*), the Supreme Court held that, absent evidence to the contrary, the Legislature intended amendments to statutes that reduce the punishment for a particular crime to apply to all defendants whose judgments were not yet final on the operative date of the amendment. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 306–308; *People v. Brown* (2012) 54 Cal.4th 314, 323.)

Howell contends Sen. Bill 1187 applies retroactively to him, citing *Estrada.* The rule of *Estrada* does not apply to Howell's case because "competency proceedings are civil in nature and collateral to the determination of defendant's guilt and punishment."

9

(*Centeno v. Superior Court* (2004) 117 Cal.App.4th 30, 43.)  Statutes addressing mental competency proceedings are curative and protective measures aimed at restoring competency, not punishment for commission of a crime.  (*Ibid.*)

Howell also cites legislative history as support for his contention that Sen. Bill No. 1187 applies retroactively.  Howell cites to language in the legislative history where the author of the legislation states the three-year period for restoration of competency was no longer "reasonable" because "medication-treatment of severely mentally ill individuals has advanced, competency restoration treatment programs have been shown to have consistently high success rates, and we have learned that committed persons attain competency in time periods far shorter than what was considered 'reasonable' in 1974."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1187.)  The author also claimed that "the vast majority (80–90%) becomes [*sic*] trial-competent within six months of starting treatment, and nearly all who attain competency do so within a year."  (*Ibid.*)

However, had the Legislature intended Sen. Bill 1187 to have retroactive application, it could have included a specific provision to so provide.  (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1212.  Moreover, even though a statute may be applied retroactively if there is a clear and compelling indication the Legislature intended such a result (*People v. Alford* (2007) 42 Cal.4th 749, 754), no such clear and compelling indication is present with SB No. 1187.

Crediting the author's statements, 80 to 90 percent of those found mentally incompetent to stand trial would be unaffected by the change in law because competency would be restored within six months of treatment, and nearly all who attain competency do so within one year of starting treatment.  For those who have not attained competency in this period of time, we see no indication in the legislative history that the Legislature intended to usurp the conclusions of the medical professionals and their prescribed

10

courses of treatment for individuals under their care by potentially cutting short competency restoration treatment. Medical professionals may have prescribed a different course of treatment if the available treatment period was two, rather than three, years. Absent a clear intent from legislative history that Sen. Bill 1187 applies retroactively, the "default rule" that no part of a statute is retroactive applies. (§ 3; *People v. Brown*, *supra*, 54 Cal.4th at p. 319.)

Consequently, we conclude Sen. Bill 1187 does not apply retroactively.

## DISPOSITION

The order filed on August 21, 2018, committing Howell to the state hospital until mental competency is restored is affirmed.

_____

FRANSON, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

POOCHIGIAN, J.

11