Filed 9/1/16  P. v. Lavin CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B266599 |
| Plaintiff and Respondent | (Los Angeles County Super. Ct. No. BA430264) |
| v. | |
| MICHAEL JAMES LAVIN, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Ronald S. Coen, Judge.  Reversed and remanded.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stacy S. Schwartz and Amada V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \*

Defendant Michael James Lavin was charged by information with two counts of battery by gassing, with prior offense allegations. (Pen. Code, §§ 243.9, subd. (a), 667.5, subd. (b), 1170, subd. (h).) Before trial, defense counsel declared a doubt about defendant's competence to stand trial under section 1368, and the trial court suspended proceedings, appointed a psychiatrist to evaluate defendant, and scheduled a competency hearing.

The case was transferred to a different department to conduct the competency hearing. Defendant refused to be interviewed by any mental health professionals. The judge charged with conducting the competency hearing concluded it had been error to suspend proceedings because there was no substantial evidence of defendant's incompetence. The court resumed proceedings and defendant was convicted by jury of both counts, and the special allegations were found true.

On appeal, defendant contends the trial court committed reversible error by failing to conduct a competency hearing. We agree and reverse on this basis. We decline to reach the merits of defendant's other arguments on appeal.

## FACTS

A number of judicial officers presided over pretrial and trial proceedings in this case. Initially, defendant was self-represented. He conducted extensive cross-examination at his October 29, 2014 preliminary hearing, and filed numerous motions, most of which concerned his perception that his speedy trial rights were violated, and his right to discovery. His motions were often rambling and hard to decipher. Nevertheless, defendant generally conducted himself appropriately, and vigorously litigated his case.

However, on December 31, 2014, the day defendant's case was first scheduled for trial, defendant appeared to become frustrated by the court's rulings on his discovery and speedy trial issues. He repeatedly interrupted the court, made inappropriate remarks before a panel of prospective jurors, and would not heed the court's warnings that his in pro. per. privileges would be revoked if he did not conduct himself respectfully. When defendant continued to interrupt the proceedings, his in pro. per. status was revoked.

2

Defendant exploded into a litany of racist and foul language directed at the judge and prosecutor, and had to be removed from the courtroom.

Counsel was appointed to represent defendant, and the trial was continued a number of times. At a pretrial hearing before James Brandlin, the supervising judge of the Criminal Division of the Los Angeles Superior Court, defendant claimed there was a conflict between him and the public defender's office, and repeatedly interrupted the judge. When the court instructed the bailiff to remove defendant from the courtroom, defendant erupted in a litany of foul insults and told the court to "Get off that bench." At the next hearing, Judge Brandlin refused to bring defendant into the courtroom. The court expressed its view that defendant "is incapable of controlling himself and comporting to the standards that are expected in our courts."

On April 24, 2015, defense counsel declared a doubt under Penal Code section 1368 and moved for a trial continuance so that she could have defendant evaluated by a psychologist to determine his competence to stand trial. Judge Brandlin found there was a substantial basis for the declaration of a doubt and suspended criminal proceedings. The court appointed a psychiatrist, and calendared the competency hearing to proceed in a different department.

The matter was assigned to Judge Larry P. Fidler to conduct the competency hearing. On June 19, 2015, the court noted that the report of the psychiatrist appointed to examine defendant indicated that defendant "didn't cooperate." Therefore, there was no substantive report to consider. Defendant asked for a *Marsden*[1] hearing. During the *Marsden* hearing, defendant moved to disqualify Judge Fidler. The court granted the motion.

The case was reassigned to Judge Ronald S. Coen that same day. The court's minutes indicate that the case was calendared for a trial setting conference and for a "1368 PC" hearing. Judge Coen acknowledged that proceedings were suspended, that

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

defendant had not cooperated with psychiatrists, and asked counsel how to proceed. Defense counsel stated that she did not "think we can really proceed without the issue of mental competency being properly addressed pursuant to 1368(c). So I'd ask the court to send him to Patton State Hospital."

Defendant's disruptive behavior once again caused him to be removed from the courtroom. The court then stated its view that counsel's assertion of a doubt as to her client's competence was entitled to some weight, but alone, was not "the substantial evidence that the court must utilize in declaring a doubt." The court stated that "counsel must produce expert opinion from a qualified and informed mental health expert stating under oath and with particularity that the defendant is incompetent, or must make some other substantial showing of incompetence that supplements and supports counsel's own opinion. Only then does a court have a non-discretionary obligation to suspend proceedings and hold a competency trial. [¶] That wasn't done. And I know that another court declared a doubt, but that was -- how can I place this -- not within the confines of the law. [¶] If there is something else you want to tell me . . . about your client's competency that I can find as substantial evidence, I'd be glad to hear it. The fact that he doesn't cooperate with a medical practitioner is not sufficient to show that he is incompetent."

Defense counsel explained that defendant refused to see her, and seemed to experience a psychotic episode when, moments before his latest removal from the courtroom, he falsely accused her of spitting on him. The court stated its view that defendant was simply a "race hater" trying to get rid of his African-American attorney. The court stated "I have not seen such evidence that I have to declare a doubt" and therefore resumed criminal proceedings. The court's minutes recorded that "the court finds there is insufficient evidence for the court to [declare] a doubt as to the defendant's mental incompetency."

After the proceedings were resumed, defendant's disruptive conduct continued. He was ordered shackled for all future hearings, and was absented from most of the trial. Defense counsel expressed continuing concerns about defendant's competence, but the

4

court concluded that defendant was attempting to manipulate the proceedings, and did not order further evaluation of defendant's competence.

Defendant was convicted as charged, and filed a timely notice of appeal.

## DISCUSSION

"A person cannot be tried or adjudged to punishment . . . while that person is mentally incompetent." (Pen. Code, § 1367, subd. (a); *People v. Sattiewhite* (2014) 59 Cal.4th 446, 464; *People v. Rogers* (2006) 39 Cal.4th 826, 846.) A defendant is incompetent if "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a); see *People v. Sattiewhite*, at p. 464.)

Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with "substantial evidence" of incompetence. (*People v. Sattiewhite*, *supra*, 59 Cal.4th at p. 464.) Once proceedings are suspended and a competency hearing is ordered, the court lacks jurisdiction to proceed on the charges against defendant until the court determines defendant to be competent. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1390 ["When a trial court suspends criminal proceedings based on a doubt that a criminal defendant is competent to stand trial, and the court thereafter fails to hold a competency hearing, the trial court 'acts in excess of jurisdiction by depriving the defendant of a fair trial' [citation], and any ensuing criminal conviction must be set aside [citations]."]; see also *People v. Marks* (1988) 45 Cal.3d 1335, 1340; *People v. Hale* (1988) 44 Cal.3d 531, 541.)

Here, Judge Brandlin found "a substantial basis for the declaration of a doubt," suspended proceedings, appointed a psychiatrist, and calendared a competency hearing. Respondent concedes, as it must, that defendant was entitled to a competency hearing based on these findings. (*People v. Hale*, *supra*, 44 Cal.3d at p. 541.)

Respondent contends that such a hearing occurred before Judge Coen on June 19, 2015. However, "[t]he record does not support respondent's conclusion that the trial

5

court viewed the . . . proceedings as a determination of defendant's competency." (*People v. Marks*, *supra*, 45 Cal.3d at p. 1337; see *People v. Maxwell* (1981) 115 Cal.App.3d 807, 812-813.) Judge Coen made no findings concerning defendant's competence. (*People v. Marks*, at p. 1343 ["the trial court [must] *expressly and unmistakably state on the record*, either orally or in writing, its determination as to whether the defendant is mentally competent to stand trial"]; see also Pen. Code, §§ 1368, subd. (b), 1369, subd. (b) [setting forth the procedures for a competency hearing, and providing for the taking of evidence and argument].) Instead, the court expressly revisited Judge Brandlin's order finding a doubt and suspending proceedings, and determined there was no substantial evidence to support that finding. Judge Coen's several references to "substantial evidence" (the standard for determining whether a doubt must be declared), indicate to us that he disagreed with Judge Brandlin having declared a doubt, not that he made a finding the defendant was competent. (*People v. Hale*, *supra*, 44 Cal.3d at p. 540.) That is, he found that a competency hearing was *not* required. This he lacked jurisdiction to do. (*In re Alberto* (2002) 102 Cal.App.4th 421, 427-428 [a superior court judge may not nullify a duly made order of another superior court judge].)

Defense counsel requested that the court order defendant be evaluated at Patton State Hospital. It appears that it was within the court's discretion under Penal Code section 1369 to make such an order. (§ 1369, subd, (a) [once a trial to determine competence is ordered, the court "shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant"].) Defense counsel never conceded she could not obtain evidence of incompetency, but instead requested a further opportunity to obtain an expert evaluation for consideration at defendant's trial to determine his competence.

It is well settled that when a trial court declares a doubt as to a defendant's mental competence to stand trial but fails to hold a competency hearing, the correct procedure is to reverse the judgment. (*Pate v. Robinson* (1966) 383 U.S. 375, 386-387; *People v. Marks*, *supra*, 45 Cal.3d at p. 1340; *People v. Hale*, *supra*, 44 Cal.3d at pp. 541-542.)

6

Because we are reversing the judgment of conviction, we need not consider defendant's other claims of error.

## DISPOSITION

The judgment is reversed, and the case is remanded for further proceedings.


GRIMES, J.

I CONCUR:


RUBIN, J.

**People v. Lavin**

**B266599**

**Bigelow, P. J., Dissenting:**

I respectfully dissent.

While I agree with the majority that defendant Lavin was entitled to a hearing and determination on the issue of his mental competence to stand trial once Judge Brandlin found that a substantial basis existed for a declaration of doubt as to Lavin's competency (Pen. Code, § 1367 et seq.; and see, e.g., *People v. Sattiewhite* (2014) 59 Cal.4th 446, 464; *People v. Hale* (1988) 44 Cal.3d 531, 541), I do not agree with the majority's conclusion that defendant Lavin never received that hearing and determination. As I read the record, Judge Coen conducted a hearing on Lavin's competency on June 19, 2015. In my view, the true nature of Judge Coen's ruling encompassed two elements: Judge Coen expressed some question about the evidentiary support for Judge Brandlin's declaration of doubt, and then Judge Coen found that Lavin failed to present sufficient evidence to establish that he was not competent to stand trial.

Resolution of what happened at the hearing before Judge Coen requires a careful review of the law regarding competency hearings and the relevant record. I start with the law. Two contrasting factual scenarios examined by the Supreme Court in *People v. Marks* (1988) 45 Cal.3d 1335 (*Marks*) demonstrate when reversal is required, and when it is not, for an alleged failure to hold a sufficient competency hearing. In *Marks*, the Supreme Court found reversal warranted. There, after the trial court declared a doubt about a defendant's mental competency, at a subsequent hearing set on the issue, defendant's counsel stated, "I think all 1368 matters have been resolved," and indicated his belief that defendant was competent. The court responded, "All right," and did nothing further. (*Marks*, at p. 1340.) The Supreme Court found that '[t]he trial court most likely construed the proceedings . . . as a waiver of a determination of the competency issue." (*Ibid.*) The court noted "the [trial] court did not even refer to defendant's competency. In response to the brief comments by defendant's counsel and

1

his request to take the competency hearing off calendar and to proceed with arraignment, the court's entire statement was, 'All right.' The [trial] court agreed only not to conduct the competency hearing . . . [and] there was no statement by the court that it had formed any opinion as to whether defendant was competent. Nor was there even a suggestion by the court that it had reviewed the psychiatrist's reports." (*Id.* at p. 1341.)

In finding the competency proceedings were insufficient in *Marks*, the Supreme Court distinguished the facts of *People v. Maxwell* (1981) 115 Cal.App.3d 807 (*Maxwell*), relied on by the People both in *Marks* and in Lavin's current case. In *Marks*, the Court stated: "[T]his case is easily distinguished from . . . *Maxwell* . . . , in which a competency hearing was found to be sufficient. In *Maxwell*, as in the present case, the defendant's counsel expressed a doubt as to his client's competency to stand trial. The trial court agreed, appointed two psychiatrists to examine the defendant, and ordered a competency hearing. On the day scheduled for the hearing, the trial court stated that it had received letters from the psychiatrist informing the court that defendant had refused to be examined. Defendant' s counsel stated that he had no reason to doubt the truth of those statements, and the trial court then stated: '"All right. Then, that being the case, I don't have any reason at this time to doubt Mr. Maxwell's [defendant's] competency to stand trial. The code provides that a defendant is presumed to be competent to stand trial, and I have no evidence to the contrary. I have observed his conduct in court, and while it seems to border on the bizarre, that may very well be calculated activity on the part of defendant. So, I am going to adjourn the 1368 proceedings at this time and reinstate criminal proceedings.'"'" (*Marks, supra,* 45 Cal.3d at p. 1342.)

The Supreme Court distinguished the facts before it in *Marks,* stating: "Unlike in *Maxwell*, the trial court in the present case did not state its opinion as to whether defendant was competent." (*Marks, supra,* 45 Cal.3d at p. 1342.) The Supreme Court in *Marks* concluded: "We agree with the *Maxwell* court, . . . that no 'magic words' are required of the trial court. We hold, however that the constitutional right to due process, section 1369, and our holding in [*People v.*] *Hale, supra,* 44 Cal.3d 531, require, at a minimum, that the trial court *expressly and unmistakably state on the record*, either orally

2

or in writing, its determination as to whether the defendant is mentally competent to stand trial." (*Marks*, at p. 1343.)

This case is like *Maxwell*, and unlike *Marks*. I now turn to the record of the proceedings in this case, a substantial portion of which I set forth, to elucidate my point. Here, the following exchange transpired in Judge Coen's courtroom:

"The Court: Proceedings were suspended by Judge Brandlin. And I understand a report was ordered from a medical practitioner that the defendant refused to speak to. Is that correct?

"Ms. Young: That is correct, your honor.

"The Court: All right. What is your desire at this time?

"Ms. Young: Your honor, actually, when we went to Judge Fiddler's court and Judge Fiddler suspended the proceedings –

"The Court: I'm sorry. Thank you.

"Ms. Young: -- on April 28. And I have appointed two doctors, actually. A psychologist, April 16th, and Mr. Lavin refused to see Dr. Kojian. Then I appointed psychiatrist Dr. Dupee because I just wanted to make sure that my client was able to competently proceed with this case because we seem to have an inability to communicate. At least he doesn't seem to talk to me about the case. He refused to talk with Dr. Dupree. She had seen him on two occasions. I don't think we can really proceed without the issue of mental competency being properly addressed pursuant to 1368(c). So I'd ask the court to send him to Patton State Hospital.

"The Defendant: I would, at this time, your honor, if the court will entertain me for a minute. The proper proceeding in this matter is a 4011.6, not the 1378 [*sic*]. The 1378 [*sic*] is a far stricter policy that takes a person out of the custody that they are in and places them in the confines of the state hospital.

"The Court: Actually, you are wrong.

"The Defendant: I am not wrong, your honor. I've already been through this - -

"The Court: I have heard enough from you.

3

"The Defendant: Well, I have a competency report right here in my hand if your honor would like to see it.

"The Court: Right now you are represented by counsel.

"The Defendant: I am not represented by counsel. I am going to ask the court, respectfully, your honor, to make an understanding — she stated that April 28 was the last proceeding. I was still pro per on May 27th.

"The Court: You are not pro per.

"The Defendant: Ms. Young didn't show up for court. And here is the document right here.

"The Court: You were not pro per. In *People v. Sattiewhite*, S-A-T-T-I-E-W-H-I-T-E, at 59 Cal.4th 466, it held that counsel's assertion of −

"The Defendant: She just spit on me, your honor. She just spit on me.

"The Court: I don't believe that, sir.

"The Defendant: Well, I'm telling that you [that] she just spit on me. Ms. Young just spit on me. She called me a piece of shit and spit on me.

"The Court: I didn't hear that.

"The Defendant: You didn't hear it because you're not paying attention. You're talking about *Sattiewhite*. . . . Don't ever to do that to me again. Don't you ever spit on me again.

"The Court: Remove the defendant. We are done.

"The Defendant: Thank you, Your Honor.

"(THE DEFENDANT IS REMOVED FROM THE COURTROOM AND THE FOLLOWING PROCEEDINGS WERE HELD)

"The Court: All right. If the record is not clear the defendant kept interrupting me and accused counsel of using a racial epithet. I have very good hearing. We are not that far from each other. I heard nothing. He accused counsel of spitting on him. Ms. Young is known to be extremely competent, and I know she wouldn't do that. [¶] But just to protect your record, did you spit on the defendant?

4

"Ms. Young: I absolutely did not. I wasn't even looking –

"The Court: I know you did not.

"Ms. Young: -- at Mr. Lavin at the time.

"The Court: All right. To continue, in *People versus Sattiewhite*, S-A-T-T-I-E-W-H-I-T-E, at 59 Cal.4th 466, it held that counsel's assertion of a belief in a client's competency is entitled to some weight, but is not the substantial evidence that the court must utilize in declaring a doubt. Thus, according to *Sattiewhite*, counsel must produce expert opinion from a qualified and informed mental health expert stating under oath and with particularity that the defendant is incompetent, or must make some other substantial showing of incompetence that supplements and supports counsel's own opinion. Only then does a court have a non-discretionary obligation to suspend proceedings and hold a competency trial. That wasn't done. And I know that another court declared a doubt, but that was – how can I place this – not within the confines of the law.

"If there is something else you want to tell me, Ms. Young, about your client's competency that I can find as substantial evidence, I'd be glad to hear it. The fact that he doesn't cooperate with a medical practitioner is not insufficient [*sic*] to show that he is incompetent. Is there anything else you can say?

"Ms. Young: Yes, your honor. Thank you. I do understand that. However, my client is unable to assist me in his defense. I have gone to jail to visit him. He won't see me. He won't talk about the case at all. I don't know his position. The only thing he seems to talk about are all these motions that I don't believe are legally valid. As the court saw just now he seems to be under some sort of psychotic episode to think that I would actually spit on him and say things to him in open court, when none of that actually happened. I think he is delusional.

"The Court: I don't know if that's a psychotic episode. Young told me – and we need to place this on the record now – that he is a race hater. You told me that he – and correct me, please, if I'm wrong, or add to it – that he does not like African-Americans, plain is simple.

5

"Ms. Young: He does not like African-Americans. He's made that very clear on the record and – but –

"The Court: I and should note that you appear to be to be African-American.

"Ms. Young: I am.

"The Court: As does the District Attorney, the People. And it appears to me – and please correct me if there is any misunderstanding – he just wants to get rid of a black lawyer?

"Ms. Young: I don't know. I mean, interestingly enough, I think Mr. Lavin wants to like me, but for my skin color. Because he called me back into lockup and he talked to me, but, you know, he talks, of course, down to me. But I don't really know if he is trying to get rid of me or if he really is mentally ill. And I really believe he is mentally ill.

"The Court: I have not seen such evidence that I have a doubt. I am not going to cite the cases about bizarre behavior because that's not before me yet. However, I have not seen any substantial evidence, and at this time since none has been presented to me, criminal proceedings are resumed."

In this case, Judge Coen referred to the appointment of medical experts to examine Lavin, and that Lavin had refused to cooperate with the examinations. Further, Judge Coen noted that Lavin was uncooperative with his counsel, and disruptive due to apparent racial animus directed against both the prosecutor and his public defender. At the end of the hearing, Judge Coen stated that he did not see any substantial evidence that Lavin was incompetent, and ordered the criminal proceedings resumed. Judge Coen made no allusions that he believed the proceedings had been improperly suspended in the first instance, but I read the record to also support the conclusion that Judge Coen correctly addressed the competency issue, as the court found in *Maxwell*. As in *Maxwell*, after a doubt was declared by Judge Brandlin, experts were appointed to examine the Lavin, and Lavin refused to cooperate with them. As in *Maxwell*, Judge Coen observed the defendant's conduct in court and found it obstructionist, but not demonstrative of incompetency. Perhaps most significantly, Judge Coen expressly and unmistakably

6

stated on the record that he did not have a doubt about Lavin's competency. Indeed, Judge Coen said: *"If there is something else you want to tell me, Ms. Young, about your client's competency that I can find as substantial evidence, I'd be glad to hear it. The fact that he doesn't cooperate with a medical practitioner is not insufficient [sic] to show that he is incompetent*." Judge Coen thereafter ordered that criminal proceedings be resumed.

On the other hand, this case is not like *Marks*, where the Supreme Court found reversal was necessary because there was no competency hearing at all. Unlike the situation in *Marks*, the trial court here did not merely say "All right" when it considered competency; the trial court here did not fail to state its determination that defendant was competent. The trial court here did not fail to review the psychiatrists' reports.

The majority believes Judge Coen did not make a finding on the issue of competency because he referred to the substantial evidence standard, that which is applicable to declaring a doubt about competency in the first instance. But a very similar thing could be said about the *Maxwell* case. There, when the trial court found Maxwell competent, it said "I don't have any reason at this time *to doubt Mr. Maxwell's [defendant's] competency* to stand trial." In other words, in *Maxwell*, the trial judge did not say, "I find the defendant competent to stand trial." (*Marks, supra,* 45 Cal.3d at p. 1342.) Instead, the court reiterated the standard by which competency is first questioned – finding it did not doubt that defendant was competent. It seems the majority would find the trial court in *Maxwell* did not hold a competency hearing because of its statement at that hearing. I am not inclined to require more precision from a trial judge than that which has been found appropriate in a case specifically approved by the California Supreme Court. Here, Judge Coen was even more specific about his finding with regard to Lavin than the judge in *Maxwell*–Judge Coen stated that the evidence did not show he was incompetent.

I simply do not read the record as does the majority – that an experienced criminal trial judge decided to eschew the well-known principle that one trial judge cannot reverse another, appointed himself a one person Court of Appeal, and then proceeded to overrule

the Supervising Judge of the Criminal Division of the Los Angeles Superior Court. It is true that Judge Coen made it clear he did not agree with Judge Brandlin's prior decision to declare a doubt about Lavin's competency, but he also considered the issue of Lavin's competency. Likewise, this record may not demonstrate the model competency hearing, but it met the requirements of *Maxwell*.

Because I find no failure to hold a competency hearing, I must turn to the other issues in the case to support my conclusion that this case should be affirmed. First I would also reject Lavin's contention that the trial judge, Honorable Dennis J. Landin, should have conducted an additional competency hearing during trial. Where, as I have found here, a hearing has been held and the defendant has been found to be competent, a trial court need not suspend the proceedings and conduct a second hearing unless there is evidence of a substantial change in circumstances or new evidence casting serious doubt on the validity of the previous competency finding. (*People v. Taylor* (2009) 47 Cal.4th 850, 864; *People v. Huggins* (2006) 38 Cal.4th 175, 220.) On appeal, a trial court's ruling on whether a second competency hearing is required is reviewed to determine whether there is substantial evidence supporting the ruling. (*People v. Huggins, supra,* 38 Cal.4th at p. 220.) Here, I would find that the record shows only that Lavin continued in his disruptive behavior following Judge Coen's ruling on competency. Thus, Judge Landin was not required to conduct a second competency hearing.

Apart from the competency issues, I would also reject Lavin's arguments challenging the jury's sufficiency of the evidence in support of battery by gassing (Pen. Code, § 243.9, subd. (a)) in count 2.

The evidence at trial showed that Lavin spat saliva in the direction of the two Sheriff's Department officials as they were escorting Lavin from his jail cell. A "large amount" of the matter contacted the closest official on the left side of his face and eyes. These facts are the subject of count 1. The "after-spray" or "peppering effect" of Lavin's spit contacted the second official, Deputy Dondanville. These facts are the subject of count 2.

8

Even assuming I accepted Lavin's statutory interpretation argument that a person who spits upon another is guilty of battery by gassing under Penal Code section 243.9, subdivision (a), only when the evidence establishes that he had the specific intent that his spit land on a specifically targeted victim, I would find the evidence supports the jury's verdict. I would find the evidence supports a finding that Lavin intended to spit on both jail officials during his attack. The fact that one victim was closer, and the subject of much more of Lavin's attention, does not mean the jury could not have found that Lavin intended to spray spit on both officials. For similar reasons, I would reject Lavin's claim that his motion to dismiss count 2 should have been granted.

Finally, I would reject Lavin's claim of instructional error as to battery by gassing in count 2. (Pen. Code, § 243.9, subd. (a).) Lavin contends the jury instructions failed to inform the jurors that they had to find that Lavin "intended to gas a particular person," namely, Deputy Dondanville. I read the instructions to be consistent with the statutory language. Penal Code section 243.9, subdivision (b), states as relevant: "For purposes of this section, 'gassing' means *intentionally* placing or throwing, or causing to be placed or thrown, upon the person of another, any human excrement or other bodily fluids or bodily substances . . . ." (Italics added.) The word "intentionally" in the statute applies to the act of projecting the bodily fluid. I do not agree with Lavin's interpretation that the word "intentionally" applies to the subject of the person upon whom the bodily fluid is placed. In short, I do not agree that Penal Code section 243.9 only makes it a crime to intentionally spit at a specifically targeted person.

For all of the reasons stated above, I would affirm the judgment.


BIGELOW, P.J.

9